**AVNET, INC. d/b/a Mechanics Choice, Plaintiff,**

v.

**The OEC CORPORATION, Jack McCollum, James L. McKeown, Ernest C. Bedell, and John E. Goza, Jr., Defendants.**

Civ. A. No. C80–1177A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 7, 1980.

Peter Q. Bassett, Alston, Miller & Gaines, Atlanta, Ga., for plaintiff.

Timothy R. Askew, Jr. and Charles L. Gregory, Arnall, Golden & Gregory, Atlanta, Ga., William G. Batchelder, Williams & Batchelder, Medina, Ohio, for defendants.

## ORDER

ROBERT H. HALL, District Judge.

In this diversity suit, Avnet, Inc. d/b/a Mechanics Choice, seeks compensatory and punitive damages and equitable relief alleging unfair competitive practices by defendants, primarily OEC Corporation and Jack McCollum. Before the court now is McCollum's motion to disqualify the law firm Alston, Miller & Gaines, presently representing Avnet, Inc. d/b/a Mechanics Choice.

The asserted ground for disqualification is that previously Alston, Miller & Gaines (hereinafter "AMG") defended McCollum, who was then employed by Avnet, against similar tort claims in a strikingly similar lawsuit. For reasons appearing below the court concludes that the motion must be granted.

Mechanics Choice is a wholesale distributor of automotive supplies. Its southeastern sales division includes North Carolina, South Carolina, Georgia and Tennessee. OEC Corporation is a direct competitor with Mechanics Choice in the wholesale automotive supply distribution business. From 1976 until May 1980, McCollum was the southeastern divisional sales manager for Mechanics Choice. Until the spring of 1980, OEC enjoyed only a minimal share of the southeastern market.

The present suit was brought by Mechanics Choice raising numerous allegations, including claims against individual defendants for breaches of contracts against competition. Of greater significance, however, are the damage and injunction claims of Counts 1 and 2 which allege that OEC pirated salesmen and employees from Mechanics Choice in order to secure the latter's customers and regional markets; that OEC maliciously interfered with Mechanics Choice's sales contracts and to that end hired McCollum as its southeastern sales manager; that MCcCollum, conspiring further with OEC, contacted at least six Mechanics Choice salesmen to arrange meetings between OEC, McCollum, and the six; that at that meeting, Mechanics Choice was disparaged and the six were lured to join OEC; that three of the six entered into a conspiracy to join OEC and to disparage Mechanics Choice to its customers while remaining on its payroll; and that these men took and filled orders for OEC on Mechanics Choice invoices, substantially damaging Mechanics Choice's southeastern sales. The complaint further alleges that the pirating conspiracy has continued.

The motion to disqualify alleges that the present lawsuit is substantially related to a lawsuit filed in 1976 in this court, named

*Kar Products, Inc. v. Avnet, Inc. d/b/a Fairmount Motor Products, Inc.,* . . . and *Jack McCollum,* Civil Action No. C76–1170A. There, Kar, a Delaware corporation engaged in the automotive parts business, sued Avnet and McCollum alleging business torts. The allegation was that Kar's salesmen developed territories and customers and had non–competition contracts, and that Avnet maliciously stole customers and salesmen from Kar, including McCollum, who was named as an individual defendant. The allegations were that McCollum then solicited other salesmen and confidential business information from Kar, to obtain Kar's customers and sales for Avnet. This passage from paragraph 10 of the complaint illustrates the operative allegations: ". . . with the knowledge and consent of Avnet, and in violation of their respective contractual obligations to Kar, David O'Scott (sic) and Jack McCollum solicited Kar's sales representatives in Georgia and elsewhere to induce them to terminate their relationship with Kar and become Avnet sales representatives, to divert the business of Kar customers to Avnet, and to disclose valuable and confidential business information of Kar to Avnet."

The Kar Products case was dismissed approximately two and one–half years ago.

Turning to the general law governing attorney disqualification, the parties do not dispute that "A former client seeking to disqualify an attorney who appears on behalf of his adversary need only to show that 'matters embraced within the pending suit \* \* \* are substantially related to the matters or cause of action wherein the attorney previously represented him.' [Citations omitted.] This rule rests upon the presumption that confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation. The court may not even inquire as to whether such disclosures were in fact made or whether the attorney in fact is likely to use the damaging disclosures to the detriment of his former client. [Citation omitted.]" *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 89 (5th Cir. 1976).

The dispute arises over what constitutes a substantial relationship. The cases teach that it is not necessary that two lawsuits involve the same operative facts, so long as there is a sufficient similarity of issues. Disqualification can also flow from an attorney's exposure in a prior representation to business methods and practices of his former client which fall short of information privileged under the attorney–client privilege.

AMG argues that disqualification is inappropriate absent some showing that confidential information by the former client was *actually* given to the attorneys now sought to be disqualified. In footnote 2 of its September 15, 1980, brief, AMG states that ". . . the language in *Uniweld* and *Church of Scientology* clearly suggests that the courts will refuse disqualification where there is no proof that confidential information was disclosed." The court does not so read the cases.

In the two cases AMG relies on, *Church of Scientology of California v. McLean,* 615 F.2d 691 (5th Cir. 1980) and *Uniweld Products, Inc. v. Union Carbide Corporation,* 385 F.2d 992 (5th Cir. 1967), the court found that not only was there a lack of any proof that confidential information was exchanged, but also there was no similarity between the current and the prior representations. In *Uniweld,* the current suit alleged trademark infringement and unfair competition; the prior suit was for patent infringement. In the *Scientology* case, the court found that there was not "a scintilla of evidence that any issue in this case was ever discussed with Mr. Berman or that he has any confidential information about it." 615 F.2d at 692. The previous representation had concerned a zoning matter; the current representation concerned a slander suit. Those cases are factually quite dissimilar to the instant litigation.

". . . [T]he underlying concern is the possibility, or appearance of the possibility that the attorney may have received confidential information during the prior representation which would be relevant to the subsequent

matter in which disqualification is sought. The test does not require the former client to show that actual confidences were disclosed. ... The inquiry is for this reason restricted to the scope of the representation engaged in by the attorney. It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification." *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980). "If there is a reasonable probability confidences were disclosed which could be used against the client in later, adverse representation, a substantial relation between the two cases is presumed." *Id.* at 998.

■ It is clear that in the Fifth Circuit it need not be shown that privileged information was actually disclosed. What is protected is the exchange of information which does not rise to the level of a privileged communication. As the Fifth Circuit has written, "The fundamental flaw in defendants' position is a confusion of the attorney–client evidentiary privilege with the ethical duty to preserve a client's confidences. * * * But the ethical duty is broader thàn the evidentiary privilege: 'This ethical precept unlike the evidentiary privilege, exists without regard to the nature or sources of information or the fact that others share the knowledge.' * * * 'A lawyer should not use *information* acquired in the course of the representation of the client to the disadvantage of the client. ...' * * * The use of the word 'information' in these Ethical Considerations as opposed to 'confidence' or 'secret' is particularly revealing of the drafters' intent to protect *all knowledge* acquired from a client, ....'' *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979). (Emphasis added).

For example, in *Government of India v. Cook Industries, Inc.*, 569 F.2d 737 (2nd Cir. 1978), disqualification was ordered of an attorney who sought to represent the India plaintiffs against the Cook defendants in a lawsuit asserting short shipments, when the attorney had previously represented Cook when Cook was defending another short shipment case. The court wrote that "the fraud issue in the ... [earlier action] required ... [the attorney] to conduct confidential inquiries as to Cook's loading procedures. The very same information necessarily was the cornerstone upon which India's fraud claim against Cook in the instant case was based." 569 F.2d at 739. The opinion does not indicate that this information was privileged; it was merely private.

■ In sum, it appears that a substantial relationship is presumed if there is a reasonable probability that confidential disclosures were made. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980). Conversely, when a showing of substantial relationship has been made, the presumption arises that confidences have been disclosed during the former representation. *U. S. v. Kitchin*, 592 F.2d 900, 904 (5th Cir. 1979); *Brennan's, supra*, 590 F.2d at 171 n.4; *Yarn Processing, supra*.

A hearing was held on this motion September 25, 1980. Testimony was offered at the hearing by the two AMG attorneys who were primarily responsible for representing Avnet in defending the Kar Products case. That testimony concerned almost exclusively conferences with McCollum, and showed extensive interrelatedness among the companies in the automotive business in the southeast. It showed offers and counteroffers to and among their sales personnel, disputes among them, and some competitive practices–all as recounted by McCollum. The court finds that the evidence at the hearing showed that McCollum had disclosed to AMG attorneys his past experiences in recruiting salesmen from competitors. Also the court notes that plaintiff's exhibit 17 contains a handwritten statement by an attorney who interviewed McCollum that OEC–the very defendant who is alleged here to be conspiring with McCollum–contacted McCollum about something during the AMG representation. The handwritten notation appears to read as follows: "Jack contacted by OEC (Ohio) ... [illegible] to Atl [Atlanta?] to see Jack".

■ Considering the record in this case and the facts adduced at the hearing, the court concludes that there is a substantial relationship between the present and prior litigation in terms of issues and facts, and also that there is a reasonable probability that confidences were disclosed by McCollum to AMG in the prior litigation.

It is plain that the Kar Products litigation and the instant case involve the same industry, which is the automotive parts industry; the same territory, which is the southeastern United States; and the same sales type activity. It is also plain that AMG now represents a plaintiff who is suing McCollum alleging that he is doing exactly the same type thing which AMG defended him against in the Kar Products litigation. Additionally, McCollum's attorneys point out the following evidentiary matters which were relevant in the Kar Products case and will in their opinion be relevant in the instant case: The nature and operation of the industry and competition within it; the manner in which customers are obtained and serviced; whether customer names are secret; the type of information considered confidential in the industry and means by which it is kept confidential; the type of information useful to competitors; types of information generally available or disseminated to salesmen and customers; the ability of salesmen to take customers with them when they change employers; the time and expense incurred to train salesmen and to develop customer lists and sales techniques; the general mobility of salesmen in the industry.

AMG heavily emphasized the fact that McCollum was not a named defendant in Count 1 of the Kar complaint, but was only named as a defendant in counts which would not be relevant to a finding of substantial relatedness. The court finds that this argument carries no weight. It is plain from reading the Kar complaint that McCollum's activities as an agent of defendant Avnet were expressly set forth and

were a primary reason for which relief was sought against Avnet. Additionally, in Count 1 injunctive relief was sought against McCollum as well as Avnet.

In conclusion, the court finds that a substantial relationship between the Kar Products case and the instant litigation is clearly present, and, moreover, there is a reasonable probability that confidential communications were given by McCollum to AMG in the course of the prior litigation. It follows that AMG is disqualified in the instant lawsuit.

The court notes in closing that the position taken by AMG in this matter is not plainly unreasonable, and no allegation is made that it is taken in bad faith. The court appreciates the openness of AMG in offering as its own witnesses the two attorneys who represented Avnet and McCollum in the Kar Products case, who read extensively from their interview notes with McCollum.[1] The court also appreciates that AMG seeks only to continue to represent the corporate client Avnet which appears to have been the firm's client for some years. Nonetheless, the court finds that the legal test for disqualification as discussed above has been met on these facts. "The need to safeguard the attorney–client relationship is not diminished by the fact that the prior representation was joint with the attorney's present client." *Brennan's, supra,* 590 F.2d at 172.

The court GRANTS the motion to disqualify the law firm Alston, Miller & Gaines from continuing to represent Avnet, Inc. in this action. All attorneys in the firm of Alston, Miller & Gaines are directed not to associate with substitute counsel in discussing or disclosing any information concerning any litigation involving McCollum that is known to those attorneys as a direct or indirect result of their prior representation of McCollum.

Additionally, plaintiff shall have 60 days in which to secure new counsel and respond to the pending motion of defendants to

1. Attorneys for OEC and McCollum objected that this testimony violated McCollum's attorney–client privilege. The court deemed the testimony admissible, but on motion has sealed the transcript.

dismiss. The clerk is directed to resubmit this case on December 15, 1980.