**In re Thomas FERRANTE, Debtor.**

**Bankruptcy No. 91–20194.**

United States Bankruptcy Court,
D. Maine.

May 1, 1991.

Dennis G. Bezanson, South Portland, Me., and William D. Robitzek, Berman, Simmons & Goldberg, Portland, Me., for debtor.

William K. McKinley, Richardson & Troubh, and Gerald F. Petruccelli, Petruccelli, Cox & Martin, Portland, Me., for Emery–Waterhouse.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

In this involuntary bankruptcy proceeding, the debtor, Thomas Ferrante ("Ferrante"), has moved to disqualify the law firm of Richardson & Troubh, counsel for Emery–Waterhouse Co. ("Emery–Waterhouse"), the petitioning creditor. Ferrante asserts that, because he is a former client of that firm, it may not now represent Emery–Waterhouse against him.

For the reasons set forth below, Ferrante's motion to disqualify counsel is denied.

### PROCEDURAL BACKGROUND

Emery–Waterhouse filed an involuntary petition against Ferrante on February 22, 1991. In support of its petition, it alleged, *inter alia*, that Ferrante owes it over $780,000.00 as guarantor of corporate obligations of DD & F, Inc. Ferrante timely answered the involuntary petition and contemporaneously moved to disqualify Emery–Waterhouse's counsel.

Evidentiary hearings on the motion to disqualify were held on March 21, 1991. The parties filed post-hearing briefs and on April 18, 1991, the court's findings and conclusions were entered on the record in open court.[1]

---

1. *See* Bankr.R. 7052 and Fed.R.Civ.P. 52(a). This memorandum sets forth in detail the analy-sis underlying those findings and conclusions.

## FACTS

Although some points are disputed, the pending issue orbits a concise factual nucleus. In 1988, Ferrante, Joel Diamon and William A. Darling allied to purchase a business with the expectation that they would ultimately form a corporation to own it. By mid-summer they held an executed letter of intent to purchase a South Portland, Maine, marina. At Darling's suggestion, the three conferred with Michael Boyd, Esq., of Richardson & Troubh. Darling, Emery–Waterhouse's former chief financial officer, knew Boyd because Richardson & Troubh had long provided legal services to Emery–Waterhouse. Boyd opened a file for the transaction. During the period in which the marina purchase was considered, Boyd and Ferrante were attorney and client. At the same time, Horace Horton, Esq., a member of another Portland, Maine law firm, served as Ferrante's personal counsel. Ferrante chose not to involve him actively in the marina matter.

Although Ferrante, Darling and Diamon discussed the status of negotiations with Boyd, they dealt with potential lenders for the project on their own. On one occasion Ferrante met with Boyd separately to discuss his personal financial situation as it related to the transaction. More particularly, he informed Boyd that he did not wish to hypothecate stock he held in Olympia Sports, a successful, privately-held corporation.[2]

Ferrante testified that he confidentially communicated to Boyd "inside information"[3] regarding events that could affect the value of the Olympia Sports stock.[4] Boyd acknowledged that Ferrante told him that the stock was not to be used as collateral so that Darling and Diamon would be aware of its unavailability to secure credit for the marina acquisition. He denied, however, that Ferrante provided him any confidential information about the stock's future value.

Ferrante and his associates did not consummate the marina purchase. Boyd closed the file after November 2, 1988, when he received a telephone call from Darling instructing him to stop work.

The evidence was less than clear regarding what other ventures the three entrepreneurs were eyeing immediately before, and immediately after, November 2. Ferrante testified that they looked at a plastics plant and, very briefly, considered at least one other business. During the same period, Darling began discussing with Emery–Waterhouse the possibility of purchasing hardware stores and inventory from it.

Ferrante testified that purchase of Emery–Waterhouse assets was discussed with Boyd. According to Ferrante's testimony, Boyd at first indicated that such a transaction might proceed as a "friendly deal," with Boyd handling the work for all parties, and that only later did he back out to represent Emery–Waterhouse. Boyd denies that he ever discussed a Darling, Diamon, Ferrante/Emery–Waterhouse deal with the three businessmen as clients, or that he told them that he could put the transaction together and close it for all concerned.

On November 28, 1988, Boyd telefaxed a draft letter of intent regarding a proposed sale of Emery–Waterhouse assets to Darling in Nevada. Boyd did not draft the letter, and asserts that he forwarded it at Emery–Waterhouse's behest. In any event, by the following day, November 29,

2. Significantly, Attorney Horton served as counsel for Olympia Sports, as well as for Ferrante. Horton discussed with Boyd Ferrante's wish to keep the stock unencumbered.

3. The term "inside information" is employed here to describe facts not available to the public potentially affecting the future of the company or investors' desire to buy, sell or hold its securities. *See, e.g., S.E.C. v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 849 (2d Cir.1968) *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

4. Ferrante had previously testified in a state court deposition that he could not recall any detailed discussion with Boyd regarding his financial condition or the potential worth of the stock. During the deposition, he only remembered informing Boyd that the Olympia stock was not to be used as collateral and that his refusal to pledge it was to be disclosed to all concerned.

Attorney Horton was actively involved on behalf of Darling, Diamon and Ferrante in negotiations with Boyd, who was then clearly acting for Emery–Waterhouse.[5]

Ferrante, Darling and Diamon later formed DD & F, Inc., which purchased the stores from Emery–Waterhouse. As part of the deal, the seller demanded and obtained Ferrante's personal guaranty. When DD & F, Inc., failed to make required payments, Richardson & Troubh continued representing Emery–Waterhouse in its collection efforts against the corporation and against Ferrante as guarantor. Claims, counterclaims and cross-claims were filed.[6] Litigation, leading to Emery–Waterhouse's filing of an involuntary petition against Ferrante, ensued.

### ISSUE

■ The issue for decision is whether Richardson & Troubh's representation of Emery–Waterhouse in these involuntary bankruptcy proceedings violates M.Bar R. 3.4(e), which provides:

> Interest of Former Client. A lawyer shall not accept employment adverse to a former client without that client's informed written consent if such new employment involves the subject matter of the former employment or may involve the use of confidential information obtained through such former employment.

If its continued representation of Emery–Waterhouse constituted a violation of the rule, Richardson & Troubh's withdrawal would be mandatory under M.Bar R. 3.5(b)(2)(ii).[7]

### DISCUSSION

Shorter work could be made of the matter had Boyd or his firm issued a specific engagement letter defining the scope of the firm's undertaking at the outset, or had it observed the bar rule's minimum requirements and obtained written consent from Ferrante when they parted ways in November 1988. However, as discussed below, the absence of a formally memorialized consent does not prove determinative of Ferrante's motion.

Rule 3.4(e) of the Maine Code of Professional Responsibility is unique. The parties have cited, and the court has uncovered, no rule of professional conduct from another jurisdiction that sets forth its proscriptions in the same terms. Although other sources may be instructive, the content of the rule is properly examined by its express language and by available Maine authorities.

■ The rule requires Richardson & Troubh's disqualification if either of its alternative grounds is satisfied. That is, if representing Emery–Waterhouse "involves the subject matter" of the firm's earlier representation of Ferrante *or* if representing Emery–Waterhouse "may involve the use of confidential information" obtained through its earlier employment by Ferrante, et al.

### A. *Subject Matter of the Former Employment.*

Under Rule 3.4(e)'s first provision, if representation of Emery–Waterhouse involves "the subject matter" of Richardson & Troubh's "former employment" by Ferrante, the firm must be disqualified. Thus, the language and structure of the rule require initial inquiry into whether or not the challenged employment concerns the same subject matter as the earlier employment.[8]

---

5. Horton wrote to Boyd detailing changes to be made to the letter at the instance of Ferrante, Darling and Diamon on November 30.

6. Ferrante asserts that DD & F, Inc., was defrauded by Emery–Waterhouse. On that basis, he and the corporation dispute liability. There has been a falling out among the entrepreneurs, as well, and Ferrante has lodged claims against Darling.

7. Under U.S. District Court Local Rule 5(d) and Me.Bankr.Rule 9029, the code of professional

responsibility in this court is that which has been adopted by the Supreme Judicial Court of Maine, as set forth in Rule 3 of the Maine Bar Rules.

8. The evidence is uncontroverted that Richardson & Troubh represented Emery–Waterhouse for years before Ferrante consulted Boyd. For purposes of applying the rule to the facts presented, however, representation of Ferrante may be considered the "former," and representation of Emery–Waterhouse the "subsequent" employment. Of course, the lengthy, pre-exist-

■ Ferrante offers his version of the scope of his attorney-client relationship with Boyd: that he, Darling and Diamon were three businessmen in search of a business and that Boyd undertook to represent them, without limitation, in that effort. Boyd testified that he agreed to represent the three only with regard to the marina venture. The evidence lends credence to Boyd's characterization of the relationship's scope. The clients approached Boyd with the marina letter of intent in hand; Boyd met with them while the deal remained alive; and, when the project died, he stopped work at Darling's request. It strains credulity to conclude that Ferrante consulted Boyd, client-to-attorney, regarding the Emery–Waterhouse transaction. Darling, characterized by Ferrante as his "partner" during the fall of 1988, well knew Boyd's pre-existing relationship with Emery–Waterhouse. Even had Boyd mentioned the potential of a "friendly deal" involving no other counsel when the transaction began to crystallize on November 28, Ferrante, Darling and Diamon immediately retained Attorney Horton. As negotiations proceeded with Boyd in place as Emery–Waterhouse's counsel, Ferrante raised no objection.

The Grievance Commission of the Board of Overseers of the Bar ("Grievance Commission") advises that, when applying Rule 3.4(e), defining the subject matter of prior representation too broadly could lead to unfairness. In another context, it has noted that the rule would sweep too wide

> if the ... broad definition of "subject matter" ... were accepted. On the contrary, it has been stated that:
>
> .... the term seems to contemplate a discrete and isolatable transaction or set of transactions between identifiable parties.... The same lawsuit or litigation is the same matter. The same issue of fact involving the same parties and the same situation or conduct is the same matter.

Grievance Comm'n of Bd. of Bar Overseers, Formal Op. 80–22 (1981) at p. 3

(quoting A.B.A. formal op. 342, p. 6 (1975)....). *See, also,* Adv. Opinion No. 82–1 (September 22, 1982) (Rule 3.4(e) comes into play "only where the specific subject matter of the former employment was involved.")

The scope of Richardson & Troubh's representation of Darling, Diamon and Ferrante did not extend to any part of the Emery–Waterhouse transaction. The purchase of the marina was a separate transaction, discrete and isolatable from the Emery–Waterhouse matter.

### B. *Use of Confidential Information.*

Maine addresses the potential use (or misuse) of a former client's confidences expressly in the second ground for disqualification set forth in M.Bar R. 3.4(e). Having concluded that the "same subject" proscription of M.Bar R. 3.4(e) does not disqualify Richardson & Troubh, the inquiry under the rule's second clause becomes whether Richardson & Troubh's representation of Emery–Waterhouse in these proceedings "may involve the use of confidential information" previously obtained from Ferrante.

### 1. Existence of Privileged Communication.

The parties agree that Ferrante conferred in private with Boyd on at least one occasion and that, during their conference, Ferrante's personal finances were discussed. Boyd claims that the discussion was limited to Ferrante's explanation that the Olympia Sports stock was to remain unencumbered and that the information he received regarding the stock was intended by Ferrante to be shared with other parties to the transaction. Ferrante disputes Boyd's account, and contends that more detailed disclosures were made, disclosures that may now be put to use against him.

The second clause of M.Bar R. 3.4(e) was enacted to safeguard client confidences and to guard against their use to the detriment of a former client. Rule 3.4(e) is a specific application of M.Bar R. 3.6($l$)(1), which

---

ing relationship between the firm and the company is not without significance in assessing the

evidence regarding the scope of the firm's representation of Ferrante.

generally enjoins attorneys from revealing confidences without the informed written consent of clients.[9] The Maine rules provide additional guidance by way of definition:

> As used in Rule 3.6(1) "confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or detrimental to the client.

M.Bar R. 3.6($l$)(5).

Maine's Grievance Commission has advised that Rule 3.4(e)'s injunction focuses on "the expectations of a *former* client to loyalty and retention of confidences by the lawyer." Professional Ethics Comm'n of Bd. of Bar Overseers Formal Op. 105 (1990) (emphasis in original). The First Circuit, applying rules of professional conduct aimed at preserving client confidences, has similarly directed the court to look to the intent of the client. *Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir.1984).

Ferrante argues that he intended that information he provided to Boyd, including a detailed, written financial statement and information regarding the Olympia Sports stock and its potential future value, remain confidential. Ferrante's assertion that he provided the financial statement to Boyd in confidence during the course of their attorney/client relationship with the intent that its contents remain confidential is belied by the fact that the statement in question was placed in Emery–Waterhouse's hands by a third party, probably Darling, long before Boyd ever received it.[10]

The evidence is more troublesome with regard to alleged confidences concerning Ferrante's Olympia Sports stock. Inquiry into the details of Ferrante's attorney/client consultations with Boyd would lead to consequences that could defeat the protections that the bar rule seeks to provide. First, the fact finder would be required to credit the testimony of either attorney or client. Creating a circumstance in which either the attorney or the client must be believed regarding what was said between them would do nothing to foster public confidence in the bar or to help dispel the appearance of impropriety. *See Kevlik v. Goldstein, supra*, 724 F.2d at 851. Second, delving into the substance of the conversations increases the likelihood that the very confidences sought to be protected will be played to a wider audience.

Faced with such analytical difficulties, the First Circuit has declared that, "The relevant test in disqualification cases involving a conflict of interest based on the actual or potential threat of the violation of the attorney/client privilege is the 'substantially related' test, . . . ." *Kevlik v. Goldstein, supra*, 724 F.2d at 850.

Under the "substantially related" test the former client "need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client." *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 268 (D.N.Y.1953). The court assumes that, during the course of representation, confidences were disclosed to the attorney bearing on the subject matter of that representation. The court is not to inquire into the nature and extent of those confidences. These assumptions favor the client's interest in nondisclosure broadly and avoid finding the facts on the basis of disputed evidence regarding the details of attorney/client discussions. *Id.*

---

**9.** Rule 3.6($l$)(1) states:

> Except as permitted by these rules or as required by law or by order of court, a lawyer shall not, without the informed written consent of the client, knowingly reveal a confidence or secret of the client; use such a confidence or secret to the disadvantage of the client; or use such confidence or secret to the advantage of the lawyer or a third person.

**10.** The copy Boyd possessed was telecopied to him by an Emery–Waterhouse official. The transmission date reflected on the copy demonstrates that it came into Boyd's hands long after he ceased representing Ferrante.

*See Kevlik v. Goldstein, supra,* 724 F.2d at 851 (citing cases).

 Emery–Waterhouse urges the court to reject the substantial relationship test in light of the language of the Maine rule. It argues that the rule prohibits representation of a party adverse to a former client only if the "same" subject matter is involved. If the subject is not "the same," it asserts, the inquiry is at an end. The argument, however, is flawed. Maine's rule, although phrased in language all its own, has the same objectives as those of analogous rules from other jurisdictions.[11] Resort to the substantial relationship test must be had in applying the second clause of the Maine rule if those objectives are to be achieved. The test supplants detailed inquiry into the substance of confidential communications with assumptions that confidences were revealed bearing on the subject matter of the previous representation. Only by permitting the assumptions to operate and by rejecting a fine-toothed factual inquiry "can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained." *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc., supra,* 113 F.Supp. at 268, 269. In other words, if the lawyer "could have obtained confidential information in the first representation that would have been relevant in the second," the line has been crossed and the lawyer should withdraw or be disqualified. *Kevlik v. Goldstein, supra,* 724 F.2d at 851, quoting *Analytica, Inc. v. N.P.D. Research, Inc.,* 708 F.2d 1263, 1266 (7th Cir.1983).[12]

 Thus, notwithstanding credibility concerns,[13] the court must assume that during the course of the attorney/client relationship Ferrante communicated confidences bearing on the subject matter of Boyd's representation, including confidential or secret details of his financial affairs.[14] To answer the question whether use of such confidential or secret information would be relevant to Richardson & Troubh's representation of Emery–Waterhouse here is to state the obvious. Absent overriding circumstances, disqualification would be appropriate.

2. Waiver.

 In certain circumstances, waiver[15] may be asserted in defense of a motion seeking disqualification of counsel as a remedy for an alleged breach of professional rules of ethics. *See Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87 (9th Cir.1983) (citing cases); *Zimmerman v. Duggan,* 81 B.R. 296, 300 (Bankr.E.D.Pa.1987). "[A] former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Trust Corp. of Montana v. Piper Aircraft Corp., supra,* 701 F.2d at 87.

 To be sure, the interests at stake are greater than those of only parties before the court. Disqualification is a remedy devised to serve the public interest. The court cannot act contrary to that inter-

---

**11.** *See, e.g., Kevlik v. Goldstein, supra; Wilson P. Abraham Construction Corp. v. Armco Steel Corp.,* 559 F.2d 250 (5th Cir.1977); *American Roller Co. v. Budinger,* 513 F.2d 982 (3d Cir. 1975); *Avnet, Inc. v. OEC Corp.,* 498 F.Supp. 818, 56 A.L.R. Fed. 181 (N.D.Ga.1980).

**12.** Put another way, the substantiality of the relationship is a function of the threat of potential disclosure of earlier-gained confidences to the detriment of the former client. *See Kevlik v. Goldstein, supra,* 724 F.2d at 851.

**13.** *See supra* n. 4.

**14.** The assumption, however, does not preclude the court from finding that some communications made during the course of the attorney-client relationship were not *intended* to be con-

fidential. For example, by providing a copy of his personal financial statement to Emery–Waterhouse through Darling, it is clear that Ferrante never considered its contents as confidential or secret.

**15.** M.Bar R. 3.4(e) requires a client's informed, written consent to adverse subsequent employment that involves the same subject or that may involve disclosure of confidences. Waiver is another matter and, as applied here, operates to preclude disqualification as an aggrieved former client's remedy under appropriate circumstances. As will be seen, finding waiver on these facts does not subvert the rule's salutary goals. The evidence is overwhelming.

est by suffering a continuing breach of professional ethics merely because the aggrieved party has waited before seeking to disqualify counsel. *See Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 574 (2d Cir.1973). Delay alone will not generally be taken as waiver. Claims of waiver must be viewed unsympathetically. To protest that disqualification will deprive a litigant of counsel of its first choice is unavailing. *Kevlik v. Goldstein, supra*, 724 F.2d at 848–49.

However, this case does not require a determination that by delay alone Ferrante waived his right to obtain an order disqualifying Richardson & Troubh. Although he did not execute a discrete, written consent, the facts establish that, from late November 1988 to December 1990, Ferrante exhibited a thorough, knowing and continuing acceptance of Richardson & Troubh's representation of Emery–Waterhouse against him. He clearly manifested consent.

Moreover, Attorney Horton represented Ferrante, Darling and Diamon in the Emery–Waterhouse transaction from late November forward. Horton was aware that Boyd and Ferrante had been attorney and client during the pendency of the proposed marina purchase; he had spoken with Boyd about Ferrante's resources and, more specifically, about the stock. Although Boyd and Richardson & Troubh represented Emery–Waterhouse from negotiations, commencing in November 1988, through closing in May 1989; although the firm continued to work for Emery–Waterhouse, and in opposition to Ferrante after closing; and although the firm filed suit for Emery–Waterhouse against Ferrante in state court in August 1990, it was not until December 1990 that the issue of the firm's alleged violation of the bar rules was raised. At all stages of Richardson & Troubh's representation of Emery–Waterhouse since late 1988, the information presumptively communicated to Boyd by Ferrante would have been "relevant" and "useful" to Emery–Waterhouse. Ferrante has been in a position to be aware of the conflict, to appreciate it and to invoke the rules for his protec-

tion since November 1988. Now he seeks to deprive his adversary of counsel it has used with his full knowledge for over two years. Ferrante "was concededly aware of [his] former attorney's representation of [his] adversary, but failed to raise an objection promptly when he had an opportunity." *INA Underwriters v. Nalibotsky*, 594 F.Supp. 1199, 1204 (E.D.Pa.1984). His right to protection from the risk that confidences or secrets may be disclosed or misused has been waived. *Id.*

Further, notwithstanding its value to ensure that attorneys observe the highest standards of integrity and fidelity, a disqualification motion may be asserted improperly, for tactical reasons aimed to disrupt the opposition, to harass opposing counsel or to effect delay. *Kevlik v. Goldstein, supra*, 724 F.2d at 848. When so employed, the motion must fail. *See, e.g., INA Underwriters Ins. Co. v. Nalibotsky, supra*, 594 F.Supp. at 1203; *Redd v. Shell Oil Co.*, 518 F.2d 311, 315 (10th Cir.1975). In light of Ferrante's past course of conduct, from which consent and waiver are so readily read, the court concludes that to now disqualify opposing counsel would serve no proper purpose of the rule Ferrante invokes. Disqualification would accomplish nothing, save providing Ferrante a brief, tactical advantage, a result that would debase the rules of professional conduct and subvert, not advance, the public interest they serve.

## CONCLUSION

For the reasons set forth above, Ferrante's motion to disqualify Richardson & Troubh as counsel for Emery–Waterhouse is DENIED.