**WILSON P. ABRAHAM CONSTRUCTION CORPORATION,**
Plaintiff-Appellee,

v.

**ARMCO STEEL CORPORATION, the Ceco Corporation, and Laclede Steel Company, Defendants-Appellants.**

No. 76–3750.

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1977.

---

6. Fed.R.Civ.P. 12(b).

Raymond J. Salassi, Jr., Charles W. Lane, New Orleans, La., for Armco Steel Corp.

Cicero C. Sessions, Burt K. Carnahan, New Orleans, La., for Ceco Corp.

Charles Kadish, New York City, Lawrence K. Benson, Jr., M. Hampton Carver, New Orleans, La., for Laclede Steel Co.

Stephen D. Susman, Gary V. McGowan, William E. Wright, Houston, Tex., Moise S. Steeg, Jr., New Orleans, La., for plaintiff-appellee.

Before GOLDBERG and FAY, Circuit Judges, and DUMBAULD *, District Judge.

PER CURIAM:

This is an appeal from an order of the district court denying the defendants' motion to disqualify counsel for plaintiff. Though the appeal is not from a final judgment in the traditional sense under 28 U.S.C. § 1291, we take jurisdiction of it as a collateral matter severable from the under-

lying suit, and too important to be denied review at this time. *See In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83 (5th Cir. 1976).

This dispute centers around exactly what relationship cocounsel for the plaintiff, a Mr. Stephen D. Susman, had with the various defendants in this suit in a prior legal matter. The factual background which leads up to this current dispute is somewhat detailed and complicated. It begins in 1972 when Mr. Susman was associated with the firm of Fulbright and Jaworski in Houston, Texas. At that time, he undertook to represent Whitlow Steel Company, Inc., an independent rebar[1] fabricator in Houston. This representation was in connection with a Federal Grand Jury investigation of the rebar steel industry in Texas. In August 1973, charges of antitrust violations were levied against Whitlow, Armco Steel Corp., The Ceco Corp., and Laclede Steel Company.[2] Armco, Ceco, and Laclede are the defendants in the present action before this court. As counsel for Whitlow, Mr. Susman met on more than one occasion with the representatives of Armco, Ceco, and Laclede. At these meetings some efforts allegedly were made to develop a cooperative defense. Exactly what information was exchanged, and the importance of that information, is hotly disputed. Mr. Susman contends that the meetings were disorganized and nothing of substance was ever discussed. The defendants contend that documents were in fact discussed and disseminated, grand jury witness lists were prepared, and reports were given as to exactly what testimony was being presented before the grand jury by the various witnesses. The gist of the defendants' argument is that Mr. Susman was privy to a substantial amount of confidential information. Mr. Susman flatly denies this.

---

* Edward Dumbauld, District Judge of the Western District of Pennsylvania, sitting by designation.

1. "Rebar" means steel reinforcement bar.

2. In actuality, nine steel mills and nine individuals were indicted for conspiring to fix prices. At the same time, but under separate indictment, four Texas independent fabricators, including Whitlow, and three individuals were also indicted.

At the same time of the grand jury investigation of the Texas steel industry, a separate grand jury investigation of the Louisiana steel industry was underway. In April 1974, four mills (including Armco, Ceco, and Laclede), an independent fabricator, and five individuals were indicted for "bid rigging". All defendants except one pled *nolo contendere* to the Louisiana indictment. After Armco, Ceco, and Laclede were sentenced in Louisiana, they filed motions to dismiss the Texas indictment. They argued that because of the close relationship of the Texas case to the Louisiana case, the double jeopardy clause prevented further prosecution. The Texas district court refused to rule on the defendants' motion at that time saying that the motion presented such a close factual question that it could not be ruled on until the court heard all the evidence at trial. This ruling prompted the defendants to enter pleas in order to avoid trial.

The final fact which needs to be brought out to fully understand the controversy before this Court is that some time after the Texas grand jury investigation, a civil suit was filed in Texas against Whitlow and the defendants in this suit. The counsel for the plaintiff in that suit was a Mr. William E. Wright. That civil suit is still pending, but at the time it was filed Mr. Susman was still counsel for Whitlow. Mr. Susman, however, denies that anything of substance was done in connection with the defense of that case where he represented Whitlow.

We are now in a position to set forth exactly what the present controversy involves. The plaintiff in the present suit, Wilson P. Abraham Construction Corporation, has filed a civil suit in Louisiana based primarily upon some facts which led to the Louisiana indictments. Counsel for the plaintiff in this suit is William E. Wright, the same person who had been counsel for another party in the Texas civil suit in which Mr. Susman represented Whitlow Steel Company. The defendants allege that the complaint in this case is virtually identical to the Texas complaint in which they were also party defendants. In any event, Mr. Wright has sought to engage Mr. Susman as co-counsel in this case. The defendants are challenging this alleging basically that Mr. Susman has a conflict of interest because of his previous relationship with them when he represented Whitlow Steel Company.

The law in this Circuit is fairly straightforward. This Court has recently reaffirmed with regards to attorney disqualification that a former client seeking to disqualify an attorney who appears on behalf of his adversary, need only to show that the matters embraced within the pending suit are *substantially related* to the matters or cause of action wherein the attorney previously represented him. *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83 (5th Cir. 1976); *T. C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265 (S.D.N.Y.1953). This rule rests upon the presumption that confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation. The Court may not even inquire as to whether such disclosures were in fact made or whether the attorney in fact is likely to use the damaging disclosures to the detriment of his former client. *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2nd Cir. 1973). The inquiry is limited solely to whether the matters of the present suit are substantially related to matters of the prior representation, and this is because this Court recognizes that in order to aid the frank exchange between attorney and client, it is necessary to preclude even a possibility that information given in confidence by a former client will ever be used without that client's consent. The law in this Circuit is, of course, little more than a reinforcement of the Code of Professional Responsibility, Ethical Considerations, and Disciplinary Rules, promulgated by the American Bar Association and adopted by the Supreme Court of Louisiana effective July 1, 1970. *See* Canons 4, 5 and 9; Ethical Considerations 4–1, 4–4, 4–5 and 4–6; and Disciplinary Rules 4–101(B) and 5–105.

■ The case before us, however, presents somewhat of a twist to the usual attorney-client controversy. It is not a former client of Mr. Susman who seeks to disqualify him, but rather co-defendants of a former client. The defendants here contend that in a case alleging conspiracy, such as the case at bar, the defendants have a right to consult together about the case, and that all information derived by any of the counsel from such consultation is necessarily privileged. The defendants persuasively argue that in a joint defense of a conspiracy charge, the counsel of each defendant is, in effect, the counsel of all for the purposes of invoking the attorney-client privilege in order to shield mutually shared confidences. We agree, and hold that when information is exchanged between various co-defendants and their attorneys that this exchange is not made for the purpose of allowing unlimited publication and use, but rather, the exchange is made for the limited purpose of assisting in their common cause. In such a situation, an attorney who is the recipient of such information breaches his fiduciary duty if he later, in his representation of another client, is able to use this information to the detriment of one of the co-defendants. Just as an attorney would not be allowed to proceed against his former client in a cause of action substantially related to the matters in which he previously represented that client, an attorney should also not be allowed to proceed against a co-defendant of a former client wherein the subject matter of the present controversy is substantially related to the matters in which the attorney was previously involved, and wherein confidential exchanges of information took place between the various co-defendants in preparation of a joint defense.

■ Having stated the bare facts of this rather complicated dispute, and having set forth the law, we unfortunately are unable to presently resolve the controversy. Exactly what information was exchanged between Mr. Susman when he represented Whitlow Steel Company and worked with counsel for the various defendants is greatly contested. Here there is no presumption that confidential information was exchanged as there was no direct attorney-client relationship. Mr. Susman should not be disqualified unless the trial court should determine that Mr. Susman was actually privy to confidential information. The parties also have a completely different version as to the similarity of the Texas grand jury investigation and the Louisiana investigation, and whether or not these investigations are substantially related to the present case.

■ Under these circumstances it is impossible for us to resolve this matter without some specific factual findings by the trial judge as to the content of the information which was exchanged and whether or not the present controversy is substantially related to the prior one. Nowhere in our search of the record were we able to find any findings made by the trial judge before he denied the defendants' motion to disqualify Mr. Susman. Consequently, we set aside the district court order denying the defendants' motion for disqualification and remand for the entry of formal findings of fact and conclusions of law dealing with these issues.