**BRENNAN'S, INC.,**
**Plaintiff-Appellee,**

v.

**BRENNAN'S RESTAURANTS, INC.,**
**et al., Defendants-Appellants.**

No. 77–1699.

United States Court of Appeals, Fifth Circuit.

Feb. 26, 1979.

Edward F. Wegmann, Fred P. Westenberger, New Orleans, La., Arnold Sprung, New York City, for defendants-appellants.

Thomas M. McBride, III, Chalmette, La., Tipton D. Jennings, IV, Dennis P. O'Reilley, Washington, D. C., for plaintiff-appellee.

Before BROWN, Chief Judge and GEWIN and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

This is an action for trademark infringement and unfair competition. This appeal, however, concerns the disqualification of attorneys. The district court barred the appellants' attorneys from further representing them on grounds of conflict of interest. The correctness of this order is the only issue before us.

I

The underlying dispute in this case arises out of the business affairs of the Brennan family of New Orleans, Louisiana, who have been in the restaurant business for many years. All of the corporate parties are owned and closely held by various members of the Brennan family. Appellee Brennan's, Inc., the plaintiff below, owns and operates Brennan's restaurant at 417 Royal Street in New Orleans. The corporate appellants own and operate other restaurants in Louisiana, Texas, and Georgia. There has been no trial as yet, but a review of the facts leading to the present suit, as disclosed by the pleadings and affidavits, is necessary to a decision of this appeal. For convenience, the parties will be referred to in the capacities in which they appear in the court below.

Prior to 1974, all the members of the Brennan family were stockholders and directors of plaintiff, and some of them were stockholders and directors of the corporate defendants.[1] All the corporations were independent legal entities in the sense that none held any of the stock of another, but they were all owned by members of the Brennan family and had interlocking boards of directors. In 1971, Edward F. Wegmann became general counsel for the family businesses, and his retainer was paid pro rata by all the corporations. He continued this joint representation until November 1973.

As part of his services, Mr. Wegmann, in close cooperation with trademark counsel in Washington, D.C., prosecuted applications for the federal registration of three service marks: "Brennan's," "Breakfast at Brennan's," and a distinctive rooster design. A registration for the rooster design was issued in February 1972, but the applications for the other two marks were initially denied on the ground that they were primarily a surname. On the advice of Washington trademark counsel, Mr. Wegmann collected data supporting a demonstration that the marks had acquired a secondary meaning,[2] and the applications were amended to include this material. Registrations were subsequently issued in plaintiff's name in March 1973. These registered service marks are the subject of this lawsuit.

Later in 1973 a dispute developed within the Brennan family over the operation and management of the family businesses. This dispute was resolved in November 1974 by dividing the corporations' stock between the two opposing family groups. Plaintiff became 100% owned by one group and the corporate defendants became 100% owned by the second group, composed of the individual defendants. Mr. Wegmann elected to continue to represent defendants and severed his connections with plaintiff and its shareholders.

At no time during the negotiations which culminated in the November 1974 settlement was there any discussion of who would have the right to use the registered

1. The corporate defendants were formed at varying times. References to them as a group in this opinion should be taken to include such of the corporate defendants as were in existence at the particular time. Defendant Brennan's Restaurant, Inc. was not formed until 1975.

2. This supporting data included numerous local and national advertisements, articles from several publications and letters commending the quality of Brennan's, and statements of the dollar volume of sales and advertising.

service marks. Both sides claimed ownership of the marks and continued to use them after the settlement. Attempts to negotiate a license or concurrent registration were unsuccessful. Plaintiff filed this suit for trademark infringement and unfair competition on May 21, 1976. In their answer and counterclaim defendants alleged that the marks were registered in plaintiff's name for convenience only, and, "in truth and actuality, the applications were filed and the registrations issued for the benefit and ownership of all of the Brennan family restaurants, including the corporate defendants." Record, vol. 2, at 460–61. Defendants also alleged that the marks and registrations are invalid.

Upon the filing of this suit, Mr. Wegmann, on behalf of the defendants, retained the services of Arnold Sprung, a New York patent and trademark attorney, to assist him in the defense of the case. On October 22, 1976, plaintiff moved for the disqualification of both attorneys: Mr. Wegmann on the ground that his present representation was at odds with the interests of plaintiff, his former client, and Mr. Sprung by imputation of Mr. Wegmann's conflict. After a hearing, the district court granted the motion. It found that the subject matter of the present suit is substantially related to matters in which Mr. Wegmann formerly represented plaintiff, and to allow him now to represent an interest adverse to his former client creates the appearance of impropriety. It also found that "the close working relationship which has been shown to exist between Mr. Wegmann and Mr. Sprung creates a significant likelihood that Mr. Sprung would have had access to or been informed of confidential disclosures made to Mr. Wegmann by his former client." Record, vol. 3, at 1045.

## II

■ We have jurisdiction of this appeal under 28 U.S.C. § 1291 (1976). *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.*, 559 F.2d 250, 251 (5th Cir. 1977); *Woods v. Covington County Bank*, 537 F.2d 804, 809–10 (5th Cir. 1976). Our standard of review is to apply the "clearly erroneous" test to findings of fact while carefully examining the district court's application of relevant ethical standards. *Woods v. Covington County Bank*, 537 F.2d at 810.[3] We first consider the disqualification of Mr. Wegmann.

Defendants argue that the district court failed to consider that in his prior representation of plaintiff, Mr. Wegmann also represented defendants. This fact of joint representation is crucial, they assert, since no confidences can arise as between joint clients. Hence, the argument goes, Mr. Wegmann violates no ethical duty in his present representation.

■ We have not addressed this precise question before. In *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.*, we reaffirmed the standard that "a former client seeking to disqualify an attorney who appears on behalf of his adversary, need only to show that the matters embraced within the pending suit are *substantially related* to the matters or cause of action wherein the attorney previously represented him," 559 F.2d at 252 (emphasis in original),[4] but we acknowledged that "[t]his rule rests upon the presumption that confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation," *id.* Defendants contend that this presumption cannot apply in this case. This argument, in our view, interprets too narrowly an attorney's duty to "preserve the confidences

3. *United States v. Gopman (In re Gopman)*, 531 F.2d 262 (5th Cir. 1976), is not to the contrary. We there applied an "abuse of discretion" standard, *id.* at 266, but the issue before the court was whether the district court had correctly found that a conflict of interest existed. We deferred to the lower court's finding that the attorney was faced with divided loyalties.

That fact having been found, disqualification was clearly required.

4. *Accord, Celanese Corp. v. Leesona Corp. (In re Yarn Processing Patent Validity Litigation)*, 530 F.2d 83, 89 (5th Cir. 1976); *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1128 (5th Cir. 1971); *T. C. Theater Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265, 268 (S.D.N.Y.1953).

and secrets of a client." ABA Code of Professional Responsibility, Canon 4 (1970).[5] The fundamental flaw in defendants' position is a confusion of the attorney-client evidentiary privilege with the ethical duty to preserve a client's confidences. Assuming the prior representation was joint, defendants are quite correct that neither of the parties to this suit can assert the attorney-client privilege against the other as to matters comprehended by that joint representation. *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103 (5th Cir. 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). But the ethical duty is broader than the evidentiary privilege: "This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge." ABA Code of Professional Responsibility, EC 4–4 (1970). "A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client . . . ." *Id.* EC 4–5. The use of the word "information" in these Ethical Considerations as opposed to "confidence" or "secret" is particularly revealing of the drafters' intent to protect all knowledge acquired from a client, since the latter two are defined terms. *See id.*, DR 4–101(A).[6] Information so acquired is sheltered from use by the attorney against his client by virtue of the existence of the attorney-client relationship. This is true without regard to whether someone else may be privy to it. *NCK Organization v. Bregman*, 542 F.2d 128, 133 (2d Cir. 1976). The obligation of an attorney not to misuse information acquired in the course of representation serves to vindicate the trust and reliance that clients place in their attorneys. A client would feel wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the client in the same matter. As the court recognized in *E. F. Hutton & Co. v. Brown*, 305 F.Supp. 371, 395 (S.D.Tex.1969), this would undermine public confidence in the legal system as a means for adjudicating disputes. We recognize that this concern implicates the principle embodied in Canon 9 that attorneys "should avoid even the appearance of professional impropriety." ABA Code of Professional Responsibility, Canon 9 (1970). We have said that under this canon there must be a showing of a reasonable possibility that some specifically identifiable impropriety in fact occurred and that the likelihood of public suspicion must be weighed against the interest in retaining counsel of one's choice. *Woods v. Covington County Bank*, 537 F.2d 804, 812–13 (5th Cir. 1976). The conflict of interest is readily apparent here, however, and we think that the balance weighs in favor of disqualification. *See Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102 (5th Cir. 1978) (adopting per se rule of disqualification in class action cases for attorneys who are members of the class or partners or spouses of named plaintiffs). The need to safeguard the attorney-client relationship is not diminished by the fact that the prior representationn was joint with the attorney's present client. Accordingly, we find the rule of *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.* fully applicable to this case. Since the district court's findings of prior representation and substantial relationship are not disputed, we affirm the disqualification of Mr. Wegmann.

---

**5.** As the profession's own expression of its ethical standards, the Code of Professional Responsibility, Ethical Considerations, and Disciplinary Rules provide substantial guidance to federal courts in evaluating the conduct of attorneys appearing before them. *See NCK Organization v. Bregman*, 542 F.2d 128, 129 (2d Cir. 1976); *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976).

**6.** *DR 4–101 Preservation of Confidences and Secrets of a Client.*

(A) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

## III

Whether Mr. Sprung should be disqualified presents a more difficult case. He has never had an attorney-client relationship with plaintiff; the district court disqualified him by imputation of Mr. Wegmann's conflict. Up to this point we have accepted, for the sake of argument, defendants' assertion that they were formerly joint clients with plaintiff of Mr. Wegmann. There is no dispute that plaintiff and defendants were previously represented by Mr. Wegmann simultaneously, but plaintiff maintains that, at least with respect to the registration of the service marks, Mr. Wegmann was representing plaintiff alone. The district court made no findings on the issue. Because we think that the disqualification of Mr. Sprung may turn on this fact and others not found by the court below, we vacate that part of the court's order relating to Mr. Sprung and remand the cause for further proceedings. For the guidance of the court on remand, we set forth our view of the applicable ethical standards.

If the court finds that Mr. Wegmann previously represented plaintiff and defendants jointly, we can see no reason why Mr. Sprung should be disqualified. As between joint clients there can be no "confidences" or "secrets" unless one client manifests a contrary intent. *See Garner v. Wolfinbarger,* 430 F.2d 1093, 1103 (5th Cir. 1970), *cert. denied, sub nom. Garner v. First American Life Insurance Co.,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971); ABA Code of Professional Responsibility, DR 4-101 (1970). Thus, Mr. Sprung could not have learned anything from Mr. Wegmann that defendants did not already know or have a right to know. Plaintiff argues that this permits the defendants indirectly to gain the benefit of Mr. Wegmann's services when they could not do so directly. If the representation was joint, however, defendants possess no information as to which plaintiff could have had any expectation of privacy in relation to the defendants. The only remaining ground for disqualification then would be an appearance of impropriety. In Part II of this opinion, we decided there is such an appearance when an attorney represents an interest adverse to that of a former client in a matter substantially related to the subject of the prior representation. Mr. Sprung has never been plaintiff's counsel, however; he is only the co-counsel of one who was. We are enjoined not to give Canon 9 an overly broad application and to maintain "a reasonable balance between the need to ensure ethical conduct on the part of lawyers . . . and other social interests, which include the litigant's right to freely chosen counsel." *Woods v. Covington County Bank,* 537 F.2d 804, 810, (5th Cir. 1976). In the case of Mr. Sprung, we think the balance weighs against disqualification. Assuming that Mr. Wegmann's prior retainer was joint, plaintiff has suffered no actual prejudice from communications between Mr. Wegmann and Mr. Sprung. There is a possibility that Mr. Sprung has obtained informally information that he would otherwise have had to seek through discovery.[7] The Second Circuit has indicated that circumvention of the discovery rules is grounds for automatic disqualification. *See NCK Organization v. Bregman,* 542 F.2d 128, 131-32, 134 (2d Cir. 1976). This seems to us an overly rigid approach. In a disqualification case, it is well to remember that "in deciding questions of professional ethics men of good will often differ in their conclusions." *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 227 (2d Cir. 1977). As the Second Circuit itself has said:

> When dealing with ethical principles, . . . we cannot paint with broad

---

7. It is very likely that Mr. Wegmann will be a witness in this case. He handled the registrations for the service marks which are the subject of this suit. Moreover, he prepared and notarized two affidavits that were executed at the time the registrations were issued. Defendants rely on these affidavits in support of their claim of ownership of the marks. The circumstances of their execution and the facts to which these affidavits purport to attest will undoubtedly be a subject of dispute at trial and Mr. Wegmann's knowledge may be relevant. If he represented all the family corporations at the time, however, none of his knowledge is privileged and his testimony could freely be sought by either side.

strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent.

*Id.* (quoting *United States v. Standard Oil Co.*, 136 F.Supp. 345, 367 (S.D.N.Y.1955)). Under the peculiar facts of this case, we do not think there would be such an appearance of impropriety in Mr. Sprung's continued representation of defendants as to warrant his disqualification.

If the district court finds that Mr. Wegmann did not previously represent these parties jointly, it does not necessarily follow that Mr. Sprung should be disqualified. The courts have abjured a per se approach to the disqualification of cocounsel of disqualified counsel. *Akerly v. Red Barn System, Inc.*, 551 F.2d 539 (3d Cir. 1977); *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir. 1971). In the absence of an attorney-client relationship between Mr. Sprung and plaintiff, a presumption of disclosure of confidences is inappropriate. *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977). Mr. Sprung should not be disqualified unless he has learned from Mr. Wegmann information the plaintiff had intended not be disclosed to the defendants. *See id.*

### IV

For the reasons we have set forth, the order of the district court is AFFIRMED IN PART and VACATED IN PART and the case remanded for further proceedings.