**RIO HONDO IMPLEMENT COMPANY, Relator,**

v.

**The Honorable Benjamin EURESTI, Jr., Presiding Judge of the 107th District Court, Respondent.**

No. 13–95–191–CV.

Court of Appeals of Texas, Corpus Christi.

July 13, 1995.

---

W. Michael Fisher, Wiech & Black, Brownsville, Bruce W. Hodge, Hodge & James, Harlingen, Willette & Aguilar, Brownsville, William A. Abernethy, Meredith, Donnell & Abernethy, Corpus Christi, for interested parties.

Roger W. Hughes, Patricia Kelly, Adams & Graham, Harlingen, for relator.

Before DORSEY, FEDERICO G. HINOJOSA, Jr., and RODRIGUEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This mandamus action concerns the propriety of the trial court's order denying Rio Hondo Implement Company's motion to disqualify plaintiff's counsel, Hodge & James. Rio Hondo sought to disqualify plaintiff's counsel on two bases: 1) the joint defense counsel privilege and 2) that James would be a material witness in the trial. The plaintiffs and real parties in interest, George and Frances Nixon d/b/a/ Nixon Farms, originally sued Rio Hondo and others for damages resulting from Rio Hondo's allegedly improper repair of their farm equipment. The Nixons deny that James received confidential information when he previously represented a settling defendant in this same action and additionally claim that Rio Hondo has waived its right to complain by waiting too long to file its motion to disqualify.

### Facts

Rio Hondo sought to disqualify the firm of Hodge & James. Bruce Hodge has represented the Nixons since this action was filed six years ago. In January 1995, he and Anthony B. James formed a partnership. It is from the formation of the partnership that the claim of disqualification arises.

James was a partner at Willette & James in 1993 during the pendency of the case. He represented Porteous Fasteners, an upstream supplier of the allegedly defective lockwashers installed by Rio Hondo. The

case was set for trial in June 1993. At that time, there were four defendants. At the behest of Rio Hondo's counsel, Patricia Kelly, Porteous, and one other defendant met to discuss the upcoming trial. According to Kelly, the three attorneys discussed "trial strategy." She claims that confidential documents were examined and that the attorneys decided how to present evidence of their affirmative defenses, how to use their peremptory strikes, and generally the best way to attack the plaintiffs' claimed damages. At this time, all of the defendants had cross-actions pending against each other. After the meeting, the trial date was continued, and in late 1993, all of the defendants, except Rio Hondo, settled with the Nixons. In January 1995, Hodge and James formed their partnership. Rio Hondo claims that the information shared at that meeting was confidential and protected by the attorney-client privilege. It asserts that James acquired confidential information at that meeting which disqualifies him from subsequent representation of the plaintiff, and that his partner is also disqualified.

After Rio Hondo filed a motion seeking to disqualify Hodge & James, the trial court held an evidentiary hearing.[1] At that hearing, Kelly testified to the facts as set out above and submitted an affidavit *in camera* for the court to review.

James testified that he had no memory of attending such a meeting. He also testified that before his former partner checked their old billing records for Porteous Fasteners and found a billing sheet for the meeting, he did not believe he had attended the meeting. The billing sheet was an exhibit at the hearing. The billing notation was, "meeting with all defense counsel for trial strategy 3.4 hours." He settled with the Nixons in December 1993. The closed file was retained

by his former partner. He testified that the cross-actions against his co-defendants were serious, "And I wasn't about to divulge anything deep and dark to her, and I don't think she would have to me with the state of things the way they were."

The other defense attorney present at the meeting, Michael Fisher who represented Allen Bolt & Screw, testified that he had no memory of the meeting either. His billing records showed 3 hours and noted, "Meeting w/2 other co-defs re strategy on case + task." He did not remember whether any documents were exchanged between the attorneys. He agreed that the three defendants present that day were generally aligned with each other as against the Nixons, especially on the issue of the Nixons' damages.

The order complained of does not state the basis for denying Rio Hondo's motion. It does not appear that the trial court was presented with evidence from which it could have ruled on the issue of disqualification based on James' potential as a material witness. We do not review the order on that basis. We review the order only on the claim of disqualification based on the joint defense privilege.

### Standard of Review

■ Mandamus will issue only to correct a clear abuse of discretion by the trial court or the violation of a duty imposed by law when there is no other adequate remedy at law, *i.e.* when an appeal is not adequate to remedy the problem. The order complained of is one denying the relator's motion to disqualify. If the trial judge improperly refused to disqualify the Nixons' counsel, the trial itself would be manifestly unfair because the Nixons would be privy to confidences

---

1. Rio Hondo also claims that James is a material witness to the effect of the settlement agreement between his former client and the Nixons. This issue was raised in the motion to disqualify and is addressed in Relator's brief, but during the evidentiary hearing no evidence was developed on this issue. Hodge asked counsel for Rio Hondo,

> Hodge: Let me just ask a question right quick. I may not have to go any further. *Are we here on material witness grounds or not?*

> Kelly: *No.*
> Hodge: Okay. So the only ground we're here on is this joint defense privilege matter?
> Kelly: Well I don't know. I have a question I need to ask him. It may raise it.

(Emphasis ours). Kelly then questioned James and no more was said about the issue of James being a material witness.

shared among the defendants. Rio Hondo would unquestionably be prejudiced if the trial court erred. However, harm to Rio Hondo from the trial court's failure to disqualify would be difficult to establish. *See Henderson v. Floyd,* 891 S.W.2d 252, 253 (Tex.1995) (orig. proceeding). Mandamus may be a proper remedy from the trial court's denial of a motion to disqualify when the trial court has clearly abused its discretion. *See id.*

### Waiver

■ Kelly testified that she first learned of the Hodge & James partnership on or about January 19, 1995 and that she immediately called Hodge to express her concerns. Over the next two and one-half months, there were several telephone calls and letters exchanged between Kelly and Hodge on the subject of disqualification. When they were unable to resolve the issue, Kelly filed a motion to disqualify on April 7, 1995. We find that Rio Hondo has not waived its right to seek disqualification by delay. *See INA v. Westergren,* 794 S.W.2d 812, 815 (Tex.App.—Corpus Christi 1990, orig. proceeding [leave denied] ) (delay of two months did not constitute waiver); *cf. Turner v. Turner,* 385 S.W.2d 230, 235–36 (Tex.1964) (delay of eighteen months waives claim of disqualification); *Enstar Petroleum Co. v. Mancias,* 773 S.W.2d 662, 664 (Tex.App.—San Antonio 1989, orig. proceeding) (per curiam) (delay of four months and filing of motion on first day of trial waived motion to disqualify).

### Disqualification

■ Whether an attorney should be disqualified is a decision to be made by the trial court with reference to the Texas Rules of Professional Conduct. *Henderson,* 891 S.W.2d at 253. Rule 1.09 prohibits representation of one party when the lawyer has formerly represented another party in a matter adverse to the former client. This rule relates to personal representation by counsel. Tex. Disciplnary R.Prof. Conduct 1.09 (1995), *reprinted in,* Tex. Gov't Code Ann. tit. 2, subtit. G, app. A, art. 10, § 9 (Vernon Supp.1995). Rule 1.05 prohibits using confidential information relating to a client to that client's disadvantage, unless the client consents. Tex. Disciplinary R.Prof. Conduct 1.05(b)(2) (1989).

■ Disqualification of counsel is a harsh remedy. We must adhere to an exacting standard when considering motions to disqualify to discourage their use as a dilatory trial tactic. *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990) (orig. proceeding). The burden is on the movant to establish with specificity a violation of one of the disciplinary rules. *Id.* When it is established that an attorney has personally represented a client and now represents another adverse to the former client in a substantially related matter, the attorney shall be disqualified. *Henderson,* 891 S.W.2d at 254. However, that is not the case before us. James never represented Rio Hondo. He represented a co-defendant. The Rules of Disciplinary Procedure do not address this circumstance. The Rules of Evidence, however, recognize a joint defense privilege as part of the attorney-client privilege. Tex.R.Civ.Evid. 503(b)(3). That rule shields the communication from discovery or disclosure. Relator claims that the evidentiary privilege essentially makes counsel for one defendant counsel for all with respect to confidential information obtained through a joint defense. Relator also urges that protection of the privilege requires disqualification of Hodge & James in this case.

We have found no Texas authority on point. We have found, however, that several federal circuits have addressed this issue. In *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.,* 559 F.2d 250 (5th Cir.1977) (per curiam), an antitrust action, Armco Steel moved to disqualify counsel for Abraham, Mr. Susman. Susman previously represented Whitlow Steel Co. in previous criminal antitrust litigation in which Whitlow and Armco were co-defendants. According to Armco, Susman, as Whitlow's counsel, was privy to confidential information such as documents, proposed grand jury testimony, and memos summarizing actual grand jury testimony and the information was shared among the co-defendants. *Id.* at 251. Susman denied that he received any confidential information. The Fifth Circuit held that "when

information is exchanged between various co-defendants and their attorneys that this exchange is not made for the purpose of allowing unlimited publication and use, but rather, the exchange is made for the limited purpose of assisting in their common cause." The court noted that an attorney should not be able to proceed against a co-defendant of a former client when the subject matter of the present controversy is substantially related to the prior representation and "wherein confidential exchanges of information took place between the various co-defendants in preparation of a joint defense." *Id.* at 253. The court did not rule on the particular disqualification of Susman because the facts were not sufficiently developed as to both the relationship between the prior litigation and the current matter and whether the information exchanged was confidential. The court found no presumption that confidential information was exchanged because there was no direct attorney-client relationship. It held that Susman should not be disqualified unless the trial court determined that Susman was actually privy to confidential information. The court remanded the case to the trial court for an evidentiary hearing. *Id.*

In *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602 (8th Cir.1977), *cert. denied*, 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978), the Eighth Circuit was confronted with a similar problem. *Weber* was an antitrust case in which Shell sought to disqualify Weber's counsel, Lashly. Lashly had represented Shell's co-defendants in prior antitrust litigation, and Shell claimed Lashly had access to confidential information as a result of the joint defense mounted by the defendants. Lashly denied receiving confidential information. The *Weber* court noted that, "[a]bsent an attorney-client relationship, no court has applied the [irrefutable presumption that confidences were disclosed] inherent in Canon 4." *Id.* at 608. The court then considered the evidence that confidential information was disclosed and found there was no basis to presume that in this case confidential information was exchanged. It upheld the trial court's order denying the motion for disqualification. *Id.* at 610.

We find the reasoning of these case persuasive and agree that a party who claims the joint defense privilege as a basis for disqualification of counsel must establish in an evidentiary hearing 1) that confidential information has been shared and 2) that the matter in which that information was shared is substantially related to the matter in which disqualification is sought. The trial court, as fact-finder in the evidentiary hearing, determines whether the information shared was confidential. We review the trial court's finding that confidential information was or was not shared under an abuse of discretion standard.

Here, as in the two federal cases cited, whether the information shared was confidential is contested. The resolution of factual disputes is committed to the trial court's discretion. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992); *see also Spears*, 797 S.W.2d at 657 (trial court did not abuse its discretion in determining that attorney did not have confidential information to require her disqualification). The trial court heard the testimony and reviewed Kelly's sealed affidavit. No one other than Kelly, the attorney seeking disqualification of Hodge & James, has any memory of the meeting.

We have reviewed Kelly's testimony and her sealed affidavit and conclude that both are conclusory and non-specific. Kelly's trial testimony was understandably vague, so as not to waive the privilege she was attempting to protect, but her sealed affidavit does not reveal with any specificity the confidences she claims were revealed to her co-defendants. Global assertions of privilege do not constitute evidence. *Ryals v. Canales*, 767 S.W.2d 226, 229 (Tex.App.—Dallas 1989, orig. proceeding); *see also Barnes v. Whittington*, 751 S.W.2d 493, 495 (Tex.1988) (party claiming attorney-client privilege to prevent discovery of documents must prove entitlement to privilege, mere global assertions of privilege insufficient). As movant, Rio Hondo had the burden to establish a basis for disqualification. We hold that Rio Hondo has not met that burden. Accordingly, we hold that the trial court did not abuse its

discretion by refusing to disqualify plaintiffs' counsel.

We deny Rio Hondo Implement Company's petition for writ of mandamus.