**In re Carl SKILES and Jennifer Skiles.**

**No. 09–03–030 CV.**

Court of Appeals of Texas, Beaumont.

Submitted Jan. 22, 2003.

Decided March 20, 2003.

John S. Morgan, Snider & Morgan, LLP, Beaumont, for relators.

George E. Bean, Chambers, Templeton, Cashiola & Thomas, LLP, Beaumont, for real party in interest.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

PER CURIAM.

Relators, Carl and Jennifer Skiles ("Skiles"), seek mandamus relief from the

trial court's order denying their motion to disqualify the firm of Chambers, Templeton, Cashiola & Thomas ("Chambers") from representing Brinton K. Bridegam and Gidget E. Bridegam ("Bridegam"), real parties in interest and plaintiffs in the underlying suit.

Skiles sold a house to Bridegam. Alleging fraud and violations of the Texas Deceptive Trade Practices Act ("DTPA"), Bridegam sued Skiles for failure to disclose defects. Bridegam's attorney was, and still is, George E. Bean. However, at the time suit was filed, Bean was a solo practitioner. In late 2002, he became associated with the Chambers firm, which previously had represented Skiles's insurer in a related coverage suit brought by Skiles.

Skiles, who was insured with a homeowner's policy issued by Farmers Insurance Exchange ("Farmers"), provided notice to Farmers of Bridegam's DTPA suit. While Farmers tendered a defense, it reserved certain rights. To defend the suit, Skiles hired Snider & Morgan, a law firm that was not on Farmers' "approved list." Pursuant to its reservation of rights, Farmers refused to pay Skiles's defense costs. Skiles, thus, sued Farmers, seeking a declaratory judgment that Farmers was required to defend and indemnify Skiles in the DTPA action.

In the coverage suit, Farmers was represented by Randal Cashiola, a member of

the Chambers law firm. Several months before Bean joined the Chambers firm, Farmers and Skiles settled the coverage suit.

■ Skiles says his defense counsel, during the pendency of the coverage suit, had numerous discussions with Cashiola about defense counsel's mental impressions, strategies and opinions regarding the underlying DTPA suit.[1] Skiles further states these communications occurred for the dual purposes of (1) reporting to Farmers about the status of its insured's defense in the DTPA case, and (2) facilitating settlement of the coverage case. Respondent does not contradict Skiles's statement of the facts. *See* TEX.R.APP. P. 52.4(b).

■ We review by mandamus the trial court's granting or denial of a motion to disqualify. *See Nat'l Med. Enters., Inc. v. Godbey,* 924 S.W.2d 123, 133 (Tex.1996) (orig. proceeding). Mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. *See In re Daisy Mfg. Co.,* 17 S.W.3d 654, 658 (Tex.2000) (orig. proceeding). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Consequently, the trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion." *See Huie v. DeShazo,* 922 S.W.2d 920, 927–28 (Tex.1996) (citing *Walker v.*

1. The specific areas of conversation, which were set out both in relator's statement of fact and in his attorney's affidavit filed with the mandamus petition, include the following:
 1. An evaluation, both legally and factually, of the DTPA case against Skiles;
 2. An evaluation of opposing counsel's handling of the DTPA case;
 3. An evaluation of potential jury verdict, if any, against Skiles;
 4. A discussion of the multiple causes of action asserted by Mr. Bean;
 5. Whether Farmers would be required to indemnify Skiles;
 6. An evaluation of potential flaws in the DTPA case;
 7. Testimony of various witnesses who were deposed;
 8. Evaluation of opposing counsel's potential errors in handling the DTPA case;
 9. Trial strategy and potential evidentiary objections.

*Packer,* 827 S.W.2d 833, 840 (Tex.1992) and *Lunsford v. Morris,* 746 S.W.2d 471 (Tex.1988)). A party generally lacks an adequate appellate remedy in disqualification cases. *See Godbey,* 924 S.W.2d at 133 (a party "is not required to simply hope that the pending case is concluded without disclosure of its confidences," nor is a party "required to wait until any damage will have been done and will be irremediable.")

Relying on *Godbey* and other cases, as well as Tex. Disciplinary R. Prof'l Conduct 1.05 and 1.09, Skiles argues (1) disqualification is required if there is a danger of disclosure of confidential information and (2) it is undisputed that Cashiola has confidential information about Skiles that is an essential part of Skiles's defense. Though not explicitly stated as such, Skiles appears to assert a "joint defense" argument, and we will consider it as such.[2] *See* Tex.R.App. P. 38.9.

■ While the Disciplinary Rules provide guidelines and suggest relevant considerations, they do not determine whether counsel is disqualified in litigation, but, instead are a starting point for our analysis. *Godbey,* 924 S.W.2d at 132. We may also consider state and federal precedents. *Id.* at 129–132.

In *Godbey,* the Texas Supreme Court held an attorney had a duty under a joint-defense agreement to protect the co-defendant's confidences and compelled the attorney's disqualification. *See Godbey,* 924 S.W.2d at 129–132. While here there is no written joint defense agreement, one is not necessary. *Compare Rio Hondo Implement Co. v. Euresti* 903 S.W.2d 128, 132–33 (Tex.App.-Corpus Christi 1995, orig. proceedings); *compare Wilson P. Abraham Const. Corp. v. Armco Steel Corp.,* 559 F.2d 250, 253 (5th Cir.1977). In neither *Rio Hondo* nor *Armco,* was there any mention of a written "joint defense" or other non disclosure agreement. *Rio Hondo,* 903 S.W.2d at 132–33; *Armco,* 559 F.2d at 253. Regardless, in both cases, the appellate court determined that participation in a joint defense could be cause for counsel's disqualification. *Id.* This determination is in keeping with the joint defense privilege found in Rule of Evidence 503(b)(1)(C), which does not require that written agreement exist in order for confidential communications to be protected under the rule. *See* Tex.R. Evid. 503(b)(1)(C).

■ In *Godbey, Rio Hondo* and *Armco,* the movant was seeking disqualification of a co-defendant's counsel. *Godbey* 924 S.W.2d at 132; *Rio Hondo,* 903 S.W.2d at 132–33; *Armco,* 559 F.2d at 253. Here, Farmers was never a co-defendant, but that distinction is not important. The joint defense privilege does not exist just for co-defendants. *See* Tex.R. Evid. 503(b)(1)(C). Instead, the rule, as one of its objectives, creates a privilege for a client to prevent the disclosure of confidential communications made for the purpose of facilitating the rendering of professional legal services, when such communications are made by the client's lawyer to a lawyer representing another party in a pending action and concerning a matter of common

---

**2.** The joint defense privilege is part of the attorney client privilege recognized in Texas Rule of Evidence 503. Under subsection 503(b)(1)(C), the "joint-defense" privilege protects "confidential communications made for the purpose of facilitating the rendition of legal services ... by the client or a representative of the client, or the client's lawyer or a representative of the lawyer, to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein." Tex.R. Evid. 503(b)(1)(C). *Id; see In re Monsanto Co.,* 998 S.W.2d 917, 922 (Tex.App.-Waco 1999, no pet.).

interest. *Id.* In the matter before us, Bridegam does not contest that Skiles's lawyer made confidential communication to Cashiola, who represented Farmers in a pending action. In addition, Bridegam does not contest that Skiles's lawyer made these communications in reporting to Farmers about the status of its insured's defense in the DTPA case. *See* TEX.R.APP. P. 52.4(b). Here, the joint defense privilege clearly applies.

 Moreover, the policy reasons for allowing joint defense attorney disqualifications are as compelling here as they were in *Godbey* and *Armco.* As the *Godbey* Court explained:

> The attorney's duty to preserve confidences shared under a joint defense agreement is no less because the person to whom they belong was never a client. The attorney's promise places him in the role of a fiduciary, the same as toward a client. *Armco Steel,* 559 F.2d at 253; *Westinghouse* [*v. Kerr–McGee Corp.*], 580 F.2d [1311] at 1319 [ (7th Cir.1978) ]. The difficulty in proving a misuse of confidences, and the anxiety that a misuse may occur, is no less for the non-client. The doubt cast upon the integrity of the legal profession is the same in either situation. Because the reasons for the presumption apply equally in both situations, and there are no other bases for differentiating between them, we hold that an attorney's knowledge of a non-client's confidential information that he has promised to preserve is imputed to other attorneys is the same law firm.

*Godbey,* 924 S.W.2d at 132.

In *Armco,* the court held that when information is exchanged between various co-defendants and their attorneys that this exchange is not made for the purpose of allowing unlimited publication and use, but rather, the exchange is made for the limited purpose of assisting in their common cause. In such a situation, an attorney who is the recipient of such information breaches his fiduciary duty if he later, in his representation of another client, is able to use this information to the detriment of one of the co-defendants. *Armco,* 559 F.2d at 253.

 A movant seeking to disqualify counsel based on an assertion of the joint defense privilege must show 1) that confidential information has been shared and 2) that the matter in which that information was shared is substantially related to the matter in which disqualification is sought. *Rio Hondo,* 903 S.W.2d at 132. Normally, the trial court, as fact-finder, would make these determinations. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (the resolution of factual disputes is committed to the trial court's discretion). And, normally in their absence, we would remand to the trial court. *See Armco,* 559 F.2d at 253. However, here Bridegam does not contest these matters. Thus, we need not remand. *See* TEX.R.APP. P. 43.3.

We conclude that Skiles's motion to disqualify should have been granted. As the law allows no other ruling, denial of the motion was an abuse of discretion. We are confident that the district court will promptly comply with our opinion. Our writ of mandamus will issue only if the district court fails to do so.

WRIT GRANTED.