In The


Court of Appeals


Ninth District of Texas at Beaumont





NO. 09-03-030 CV







IN RE CARL SKILES AND JENNIFER SKILES









Original Proceeding






O P I N I O N



 Relators, Carl and Jennifer Skiles ("Skiles"), seek mandamus relief from the trial
court's order denying their motion to disqualify the firm of Chambers, Templeton,
Cashiola & Thomas ("Chambers") from representing Brinton K. Bridegam and Gidget E. 
Bridegam ("Bridegam"), real parties in interest and plaintiffs in the underlying suit. 

 Skiles sold a house to Bridegam. Alleging fraud and violations of the Texas
Deceptive Trade Practices Act ("DTPA"), Bridegam sued Skiles for failure to disclose
defects. Bridegam's attorney was, and still is, George E. Bean. However, at the time suit
was filed, Bean was a solo practitioner. In late 2002, he became associated with the
Chambers firm, which previously had represented Skiles's insurer in a related coverage
suit brought by Skiles. 

 Skiles, who was insured with a homeowner's policy issued by Farmers Insurance
Exchange ("Farmers"), provided notice to Farmers of Bridegam's DTPA suit. While
Farmers tendered a defense, it reserved certain rights. To defend the suit, Skiles hired
Snider & Morgan, a law firm that was not on Farmers' "approved list." Pursuant to its
reservation of rights, Farmers refused to pay Skiles's defense costs. Skiles, thus, sued
Farmers, seeking a declaratory judgment that Farmers was required to defend and
indemnify Skiles in the DTPA action. 

 In the coverage suit, Farmers was represented by Randal Cashiola, a member of the
Chambers law firm. Several months before Bean joined the Chambers firm, Farmers and
Skiles settled the coverage suit. 

 Skiles says his defense counsel, during the pendency of the coverage suit, had
numerous discussions with Cashiola about defense counsel's mental impressions, strategies
and opinions regarding the underlying DTPA suit. (1)

 Skiles further states these
communications occurred for the dual purposes of (1) reporting to Farmers about the status
of its insured's defense in the DTPA case, and (2) facilitating settlement of the coverage
case. Respondent does not contradict Skiles's statement of the facts. See Tex. R. App.
P. 52.4(b).

 We review by mandamus the trial court's granting or denial of a motion to
disqualify. See Nat'l Med. Enters., Inc. v. Godbey, 924 S.W.2d 123, 133 (Tex.1996)
(orig. proceeding). Mandamus will issue only to correct a clear abuse of discretion or the
violation of a duty imposed by law when there is no other adequate remedy at law. See 
In re Daisy Mfg. Co., 17 S.W.3d 654, 658 (Tex. 2000) (orig. proceeding). "A trial court
has no 'discretion' in determining what the law is or applying the law to the facts.
Consequently, the trial court's erroneous legal conclusion, even in an unsettled area of
law, is an abuse of discretion." See Huie v. DeShazo, 922 S.W.2d 920, 927-28 (Tex.
1996) (citing Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) and Lunsford v. Morris,
746 S.W.2d 471 (Tex.1988)). A party generally lacks an adequate appellate remedy in
disqualification cases. See Godbey, 924 S.W.2d at 133 (a party "is not required to simply
hope that the pending case is concluded without disclosure of its confidences," nor is a
party "required to wait until any damage will have been done and will be irremediable.")

 Relying on Godbey and other cases, as well as Tex. Disciplinary R. Prof'l
Conduct 1.05 and 1.09, Skiles argues (1) disqualification is required if there is a danger
of disclosure of confidential information and (2) it is undisputed that Cashiola has
confidential information about Skiles that is an essential part of Skiles's defense. Though
not explicitly stated as such, Skiles appears to assert a "joint defense" argument, and we
will consider it as such. (2) See Tex. R. App. P. 38.9. 

 While the Disciplinary Rules provide guidelines and suggest relevant considerations,
they do not determine whether counsel is disqualified in litigation, but, instead are a
starting point for our analysis. Godbey, 924 S.W.2d at 132. We may also consider state
and federal precedents. Id. at 129-132.

 In Godbey, the Texas Supreme Court held an attorney had a duty under a
joint-defense agreement to protect the co-defendant's confidences and compelled the
attorney's disqualification. See Godbey, 924 S.W.2d at 129-132. While here there is no
written joint defense agreement, one is not necessary. Compare Rio Hondo Implement Co.
v. Euresti 903 S.W.2d 128, 132-33 (Tex. App.--Corpus Christi 1995, orig. proceedings);
compare Wilson P. Abraham Const. Corp. v. Armco Steel Corp., 559 F.2d 250, 253 (5th
Cir.1977). In neither Rio Hondo nor Armco, was there any mention of a written "joint
defense" or other non disclosure agreement. Rio Hondo, 903 S.W.2d at 132-33; Armco,
559 F.2d at 253. Regardless, in both cases, the appellate court determined that
participation in a joint defense could be cause for counsel's disqualification. Id. This
determination is in keeping with the joint defense privilege found in Rule of Evidence
503(b)(1)(C), which does not require that written agreement exist in order for confidential
communications to be protected under the rule. See Tex. R. Evid. 503(b)(1)(C). 

 In Godbey, Rio Hondo and Armco, the movant was seeking disqualification of a co-defendant's counsel. Godbey 924 S.W.2d at 132; Rio Hondo, 903 S.W.2d at 132-33; 
Armco, 559 F.2d at 253. Here, Farmers was never a co-defendant, but that distinction is
not important. The joint defense privilege does not exist just for co-defendants. See Tex.
R. Evid. 503(b)(1)(C). Instead, the rule, as one of its objectives, creates a privilege for
a client to prevent the disclosure of confidential communications made for the purpose of
facilitating the rendering of professional legal services, when such communications are
made by the client's lawyer to a lawyer representing another party in a pending action and
concerning a matter of common interest. Id. In the matter before us, Bridegam does not
contest that Skiles's lawyer made confidential communication to Cashiola, who represented
Farmers in a pending action. In addition, Bridegam does not contest that Skiles's lawyer
made these communications in reporting to Farmers about the status of its insured's
defense in the DTPA case. See Tex. R. App. P. 52.4(b). Here, the joint defense privilege
clearly applies. 

 Moreover, the policy reasons for allowing joint defense attorney disqualifications
are as compelling here as they were in Godbey and Armco. As the Godbey Court
explained:

 The attorney's duty to preserve confidences shared under a joint defense
agreement is no less because the person to whom they belong was never a
client. The attorney's promise places him in the role of a fiduciary, the same
as toward a client. Armco Steel, 559 F.2d at 253; Westinghouse, 580 F.2d
at 1319. The difficulty in proving a misuse of confidences, and the anxiety
that a misuse may occur, is no less for the non-client. The doubt cast upon
the integrity of the legal profession is the same in either situation. Because
the reasons for the presumption apply equally in both situations, and there
are no other bases for differentiating between them, we hold that an
attorney's knowledge of a non-client's confidential information that he has
promised to preserve is imputed to other attorneys is the same law firm.

Godbey, 924 S.W.2d at 132.

 In Armco, the court held that when information is exchanged between various
co-defendants and their attorneys that this exchange is not made for the purpose of
allowing unlimited publication and use, but rather, the exchange is made for the limited
purpose of assisting in their common cause. In such a situation, an attorney who is the
recipient of such information breaches his fiduciary duty if he later, in his representation
of another client, is able to use this information to the detriment of one of the
co-defendants. Armco, 559 F.2d at 253.

 A movant seeking to disqualify counsel based on an assertion of the joint defense
privilege must show 1) that confidential information has been shared and 2) that the matter
in which that information was shared is substantially related to the matter in which
disqualification is sought. Rio Hondo, 903 S.W.2d at 132. Normally, the trial court, as
fact-finder, would make these determinations. Walker v. Packer, 827 S.W.2d 833, 839
(Tex. 1992) (the resolution of factual disputes is committed to the trial court's discretion).
And, normally in their absence, we would remand to the trial court. See Armco, 559 F.2d
at 253. However, here Bridegam does not contest these matters. Thus, we need not
remand. See Tex. R. App. P. 43.3. 

 We conclude that Skiles's motion to disqualify should have been granted. As the
law allows no other ruling, denial of the motion was an abuse of discretion. We are
confident that the district court will promptly comply with our opinion. Our writ of
mandamus will issue only if the district court fails to do so.

 WRIT GRANTED.

 PER CURIAM

Submitted on January 22, 2003

Opinion Delivered March 20, 2003 


Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. The specific areas of conversation, which were set out both in relator's statement
of fact and in his attorney's affidavit filed with the mandamus petition, include the
following:


 An evaluation, both legally and factually, of the DTPA case against Skiles;
 An evaluation of opposing counsel's handling of the DTPA case;
 An evaluation of potential jury verdict, if any, against Skiles;
 A discussion of the multiple causes of action asserted by Mr. Bean;
 Whether Farmers would be required to indemnify Skiles;
 An evaluation of potential flaws in the DTPA case;
 Testimony of various witnesses who were deposed;
 Evaluation of opposing counsel's potential errors in handling the DTPA case;
 Trial strategy and potential evidentiary objections.

2. The joint defense privilege is part of the attorney client privilege recognized in
Texas Rule of Evidence 503. Under subsection 503(b)(1)(C), the "joint-defense" privilege
protects "confidential communications made for the purpose of facilitating the rendition
of legal services . . . by the client or a representative of the client, or the client's lawyer
or a representative of the lawyer, to a lawyer or a representative of a lawyer representing
another party in a pending action and concerning a matter of common interest therein." 
Tex. R. Evid. 503(b)(1)(C). Id; see In re Monsanto Co., 998 S.W.2d 917, 922 (Tex.
App.--Waco 1999, no pet.).