# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60414
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

March 23, 2016

Lyle W. Cayce
Clerk

United States of America, ex rel, DONALD C. HOLMES,

> Plaintiff - Appellant

v.

NORTHROP GRUMMAN CORPORATION, A Delaware Corporation; HUNTINGTON INGALLS, INCORPORATED, formerly known as Northrop Grumman Shipbuilding,

> Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:13-CV-85

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

PER CURIAM:*

    Plaintiff-Appellant Donald Holmes brought this qui tam action as relator for the Government under the False Claims Act. He appeals the district court's order disqualifying him from serving as a relator in the suit and dismissing the

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60414

case without prejudice to the Government.  Because Holmes fails to raise any arguments warranting reversal, we AFFIRM.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This dispute involves two underlying proceedings and a tangled array of related actions.  And, like so many cases that have appeared in our court recently, Hurricane Katrina was the catalyst for the chain of events leading to this appeal.

Northrop Grumman Corporation ("NGC")[1] is a large government contractor that, amongst other things, operates shipyards in Mississippi and Louisiana.  Northrop Grumman Risk Management, Inc., insured its parent company, NGC, for certain losses related to those shipyards.  A separate company, Munich Re, then provided reinsurance for NGC's covered losses.  In late 2005, NGC presented a claim under its policy with Munich Re for alleged damages to several of its shipyards as a result of Hurricane Katrina.  During the adjustment process, Munich Re and NGC entered into a confidentiality agreement that prohibited Munich Re and its agents from disclosing documents and information that they received from NGC.  Munich Re ultimately initiated arbitration proceedings in London, England, to resolve coverage disputes under the Munich Re/NGC reinsurance policy (the "London Arbitration").  Holmes and another lawyer, Gerald Fisher, represented Munich Re in the London Arbitration.

While the London Arbitration was pending, Munich Re submitted a request with the United States Navy for documents relating to NGC.  The Navy agreed to release the requested documents if an enforceable protective order was put in place.  As a result, on April 6, 2010, Munich Re—represented by

---

[1] For simplicity purposes, we will refer to NGC and its subsidiaries as "NGC" with the exception of one NGC's subsidiaries, Northrop Grunman Risk Management, Inc.

2

No. 15-60414

Holmes and Fisher—filed a complaint in the U.S. District Court for the District of Columbia against NGC and several of its subsidiaries seeking a protective order (the "Protective Order Litigation"). In the complaint, Holmes and Fisher stated that they sought the relevant documents "in aid of private foreign arbitration only" and that they were "in no way . . . attempt[ing] to usurp the power of the arbitration tribunal" for other purposes. The complaint included a proposed protective order, which prohibited the use of the requested documents for any purpose outside of the London Arbitration.

On June 2, 2010, while the Protective Order Litigation was still pending, Holmes and Fisher filed a qui tam lawsuit against NGC and others under the False Claims Act ("FCA"). They alleged that NGC had defrauded the Navy by using government funds allocated for expenses related to Hurricane Katrina to cover cost overruns that had occurred before the storm. Amongst other things, the complaint alleged that a review of the documents that they anticipated receiving from the Navy would help prove their claim. This complaint was filed under seal pursuant to the FCA, and the suit was later transferred from the District of Columbia to the Southern District of Mississippi.

On June 18, 2010, the parties in the Protective Order Litigation stipulated to a protective order, and on June 24, 2010, the district court entered the proposed protective order (the "Protective Order" or "Order"). The Protective Order stated that any produced documents designated "Court Protected Material" would "be used or disclosed solely in the [London] Arbitration" and would "not be used in any other proceeding or for any other purpose without further order of this Court." The Protective Order further required the parties to return or destroy all protected materials at the conclusion of the London Arbitration. Despite the express terms of the Protective Order, Holmes submitted documents he received from the Navy to

No. 15-60414

the Department of Justice's Civil Fraud Division and to the district court presiding over the qui tam action.

On November 11, 2011, NGC and Munich Re settled the London Arbitration.

On December 8, 2011, the United States officially declined to intervene in the qui tam suit. In previous filings, the Government explained that it had investigated the claims, and that, amongst other things, its decision not to participate "stem[med] from serious ethical and professional responsibility concerns arising from the particular circumstances of [the] action." On August 18, 2012, Fisher also withdrew from the case when Holmes filed the operative First Amended Complaint.

In October 2013, Appellees filed a motion to disqualify Holmes from representing the United States as a qui tam relator, citing his unethical conduct in pursuing the claim. On June 3, 2015, the district court granted the motion and issued an order (1) disqualifying Holmes as a relator and (2) dismissing the case with prejudice as to Holmes, but without prejudice as to any rights of the United States. Holmes timely appealed.

## II.    STANDARD OF REVIEW

We review rulings on motions to disqualify for abuse of discretion. *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311 (5th Cir. 1995). Under this standard, we review fact-findings for clear error and review de novo the district court's application of the relevant rules of attorney conduct. *Id.* This same abuse of discretion standard applies in our review of a district court's dismissal of a complaint as a result of ethical violations. *See Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009); *see also United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 165–66 (2d Cir. 2013).

4

No. 15-60414

## III.     DISCUSSION

In a thorough and detailed opinion, the district court outlined Holmes' numerous ethical violations committed in pursuit of this qui tam action.  Citing the District of Columbia Rules of Professional Conduct, the Mississippi Rules of Professional Conduct, and the American Bar Association's Model Rules,[2] the district court persuasively explained that Holmes violated no less than four ethical duties.

The court first explained that Holmes violated his duty of loyalty by taking a position in the qui tam suit that was contrary to the interests of his client, Munich Re, in the London Arbitration.  *See* ABA Model Rule 1.7(a) ("[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest.").   The analysis is straightforward:   in the London Arbitration, Munich Re argued that it did not owe NGC compensation for certain losses related to Hurricane Katrina in part because the Government had previously paid NGC compensation for those losses; Holmes then argued in the qui tam action that the Government should not have paid all of NGC's claimed losses from Hurricane Katrina.[3]  These two positions are clearly in direct conflict.

---

[2] The district court explained that these rules apply because: (1) much of Holmes' conduct occurred while the case was pending in the U.S. District Court for the District of Columbia, (2) the Mississippi Rules of Professional Conduct apply to litigants practicing in federal court in Mississippi, and (3) the Fifth Circuit recognizes the ABA Model Rules as the national standard for professional conduct.  *See U.S. ex rel. Holmes v. Northrop Grumman Corp.*, No. 1:13CV85-HSO-RHW, 2015 WL 3504525, at *4 (S.D. Miss. June 3, 2015).  There is no material difference for purposes of this case between the three sets of rules, and therefore our discussion centers on the ABA Model Rules, as they are the "national standards utilized by this circuit in ruling on disqualification motions."  *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992).

[3] Holmes argues that the qui tam action was a litigation tactic to force settlement in the London Arbitration and that he received informed consent from Munich Re to pursue his claim.  Oddly, in support of the proposition that he disclosed conflicts issues with his client, Holmes cites to a filing by the Government in which the Government expressed serious "ethical and professional responsibility concerns" with Holmes' conduct, including "a

No. 15-60414

Perhaps most troubling of the violations was Holmes' blatant disregard for the Protective Order and his related violation of his duty of candor to the court. There is no dispute that Holmes violated the express terms of the Protective Order by relaying the documents he received in the Protective Order Litigation to the Department of Justice and the district court in the qui tam action; indeed, Holmes has conceded the point.[4] He also concedes on appeal that he was obligated to follow the Protective Order in pursuing his qui tam claim.[5]

The district court also concluded that Holmes violated his duty of candor during the course of the Protective Order Litigation. Holmes and Fisher told the court in the Protective Order Litigation on April 6, 2010, that Munich Re was seeking documents for use solely in the London Arbitration. On June 2, 2010, Holmes filed the qui tam suit, and told the court there that he expected that the documents he received from the Navy would prove NGC's alleged fraud. Holmes stipulated to the Protective Order on June 18, 2010, and the order was entered on June 24. He then promptly disclosed the documents he

---

potential conflict between [Holmes'] claims in this qui tam action and those of [his] insurance company client[, Munich Re,] in its arbitration with NGC." The Government further stated that its communications with Munich Re did not assuage these concerns. The other evidence that Holmes cites for this claim is limited, and indicates that he represented to Munich Re that he was legally required to bring his qui tam suit (which he was not) and that there is no attorney-client privilege issue (which the district court did not raise).

[4] In fact, Holmes filed a motion with the U.S. District Court for the District of Columbia to correct his violation of the Protective Order. In particular, he asked the court for a modification of the Order to allow him to use the protected documents in the qui tam suit and to sanction him in the amount of $1,000 for his violation. The district court denied the motion, finding "no reason—let alone good cause—to change the terms of the original protective order." *Munchener Ruckversicherungs-Gesellschaft Aktiengesellschaft in Munchen v. Northrop Grumman Risk Mgmt. Inc.*, No. 10-551 (JEB), 2015 WL 8483241, at *6 (D.D.C. Dec. 9, 2015).

[5] The district court similarly found that Holmes' disclosures included Munich Re's confidential information—obtained during the course of his representation—in violation of his duty of confidentiality. *See* ABA Model Rule 1.6(a) ("A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent . . . .").

6

received pursuant to the Protective Order to third parties in direct contravention of the terms of the Order and his representations to the court in the Protective Order Litigation.  Later, in the operative First Amended Complaint, Holmes stated that he had "gained access to documents and information showing that the U.S. Government has been defrauded," including "documentation submitted by Northrop Grumman to the Navy."  Based on this timeline, the district court did not clearly err in finding that Holmes violated his duty of candor in his representations to the court in the Protective Order Litigation.[6]  *See* ABA Model Rule 3.3(a) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."); *see also* ABA Model Rules 4.1(a), 8.4(c).  This timeline also supports the court's finding that Holmes *knowingly* violated the Protective Order.

The district court concluded that (1) "based on the totality of the ethical violations committed by Holmes surrounding this qui tam case, Holmes should be disqualified from serving as relator in this case," and (2) "merely disqualifying Holmes from serving as relator without dismissing the case would greatly prejudice Northrop Grumman because the case would be tried on a record developed primarily through the fruits of Holmes' unethical conduct."  Citing *Quest Diagnostics*, 734 F.3d at 167, the district court noted that its dismissal of the complaint was further justified by the fact that neither the United States, as the real party in interest, nor any other relator was foreclosed from bringing the claims.

---

[6] Holmes claims that he was "extremely candid" with the court "about documents, where they came from, and the fact that he needed further guidance from the District Court as to how to deal with them."  In support he cites filings made with the district court in the qui tam suit.  This argument is, at best, misguided:  he violated his duty of candor to the court in the Protective Order Litigation in an apparent effort to gain access to the relevant documents—his disclosures in the qui tam suit are therefore irrelevant.

No. 15-60414

District courts are afforded discretion in penalizing ethical violations, including disqualifying a relator and dismissing his suit in a qui tam action, *see id.* at 165–69 (affirming the disqualification of relator and the dismissal of the complaint in qui tam suit for ethical violations); *Salmeron*, 579 F.3d at 798 (similar), and Holmes has failed to raise any competent argument as to how the district court abused its discretion here. In his briefing before the district court, Holmes challenged his disqualification largely based on his assertion that ethics rules and confidentiality duties are inapplicable in FCA cases. He now acknowledges on appeal that he is obligated to abide by his ethical obligations as a lawyer—even in FCA cases—and that he was and is bound by the terms of the Protective Order.[7]

In addition to conceding these points of law, his brief on appeal fails to muster a cognizable argument to bolster his position, as it lacks any meaningful citation to legal authority,[8] and contains only sparse reference to the record on appeal.[9] This failure is inexcusable given that Holmes is an experienced attorney and has already been warned by the district court in this

---

[7] *See Quest Diagnostics Inc.*, 734 F.3d at 163 (citing *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005), and holding that nothing in the FCA evinces a clear legislative intent to preempt state statutes and rules that regulate attorneys' disclosure of client confidences); *Holden v. Simpson Paper Co.*, 48 F. App'x 917, 2002 WL 31115137, at *2 (5th Cir. Sept. 18, 2002) ("Deliberately disobeying court orders demonstrates sufficient bad faith to justify a district court's sanction under its inherent powers.").

[8] In his brief, Holmes' legal citations are limited to the following: one case (in the standard of review section); Rule 12(b)(6) (in the standard of review section); the FCA (twice, in the jurisdiction section); and 18 U.S.C. § 4 (in the facts section). He also includes cross-references to portions of motions that he filed in district court; however, we have previously held that "an appellant may not incorporate by reference arguments made in the district court." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 431 n.6 (5th Cir. 2013).

[9] Holmes' only meaningful citations to the record are discussed in footnotes 3 & 6, *supra.*

litigation about his failure to properly brief matters.[10]  We therefore decline the invitation to dig through Holmes' bald assertions and marshal an argument on his behalf; as we have previously stated, "[j]udges are not like pigs, hunting for truffles buried in briefs." *de la O v. Hous. Auth. of City of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)).[11]

Holmes' remaining argument on appeal is that the district court did not afford him an evidentiary hearing on NGC's disqualification motion; however, Holmes did not raise any evidentiary issues before the district court and there is no indication that he ever requested an evidentiary hearing on the disqualification motion.  And, sure enough, he fails to cite any legal authority on appeal supporting the position that he is entitled to a hearing.  We therefore find no reason to conclude that the district court abused its discretion in not holding an evidentiary hearing on NGC's motion to disqualify.  *See In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 319 (5th Cir. 2012) (stating that a

---

[10] Holmes is an experienced lawyer, having spent over forty-seven years as a practicing attorney, including as a partner in one of this country's largest law firms.  The district court therefore warned Holmes that, although he is appearing *pro se*, he "is not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiff because an attorney is presumed to have a knowledge of the legal system and need less protections from the court."  *See Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 234 (D.D.C. 2007); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (stating that "*pro se* attorneys . . . typically cannot claim the special consideration which the courts customarily grant to *pro se* parties." (internal quotation marks omitted)).  Later, the district court issued an Order on Miscellaneous Relief, admonishing Holmes and stating: "in what appears to be a recurring practice of the relators in this case, they cite no case law, statute, or other legal authority indicating this Court's power to grant such relief, nor does the Court discern any legal basis for doing so."  The court then specifically ordered that "the relators shall refrain from filing any further motions in this case without citations to supporting legal authority."

[11] *See also United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010) ("A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it. . . . [A]mong other requirements to properly raise an argument, a party must ordinarily identify the relevant legal standards and any relevant Fifth Circuit cases." (citation and internal quotation marks omitted)).

district court's denial of an evidentiary hearing is reviewed for abuse of discretion); *see also United States v. Skilling*, 554 F.3d 529, 568 n.63 (5th Cir. 2009), *aff'd in part, vacated in part on other grounds,* 561 U.S. 358 (2010) (holding that appellant waived his argument that he was entitled to an evidentiary hearing because the appellant failed to brief the following issues: "When is a district court obligated to hold an evidentiary hearing?  What is the standard of review?  Are there any relevant Fifth Circuit cases?").

## IV.    CONCLUSION

Given Holmes' failure to challenge the district court's careful and well-reasoned opinion in any meaningful way, we AFFIRM.