# United States Court of Appeals
# for the Federal Circuit

---

**DYNAMIC 3D GEOSOLUTIONS LLC,**
*Plaintiff-Appellant*

**ACACIA RESEARCH CORPORATION, ACACIA
RESEARCH GROUP LLC,**
*Nonparties-Appellants*

**v.**

**SCHLUMBERGER LIMITED (SCHLUMBERGER
N.V.), SCHLUMBERGER HOLDINGS
CORPORATION, SCHLUMBERGER TECHNOLOGY
CORPORATION,**
*Defendants-Appellees*

---

2015-1628, 2015-1629

---

Appeals from the United States District Court for the
Western District of Texas in No. 1:14-cv-00112-LY, Judge
Lee Yeakel.

---

Decided: September 12, 2016

---

MICHAEL JAMES COLLINS, Collins, Edmonds, Pogor-
zelski, Schlather & Tower PLLC, Houston, TX, argued for
plaintiff-appellant. Also represented by JOHN J. EDMONDS,
SHEA NEAL PALAVAN.

STEVEN MARK HANLE, Stradling Yocca Carlson & Rauth, P.C., Newport Beach, CA, argued for nonparties-appellants. Also represented by MARC J. SCHNEIDER, TRAVIS PHILLIP BRENNAN.

MAXIMILIAN A. GRANT, Latham & Watkins LLP, Washington, DC, argued for defendants-appellees. Also represented by GABRIEL BELL, THOMAS J. HUMPHREY; TERRENCE J. CONNOLLY, New York, NY; ANN MARIE WAHLS, Chicago, IL.

———————————

Before LOURIE, WALLACH, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* LOURIE.

Concurring opinion filed by *Circuit Judge* WALLACH.

LOURIE, *Circuit Judge.*

Dynamic 3D Geosolutions LLC ("Dynamic 3D"), along with Acacia Research Corporation and Acacia Research Group LLC (collectively, "Acacia"), appeal from the decision of the United States District Court for the Western District of Texas disqualifying counsel and dismissing its patent infringement complaint without prejudice. *Dynamic 3D Geosolutions LLC v. Schlumberger Ltd.*, No. A-14-CV-112-LY, 2015 WL 4578681 (W.D. Tex. Mar. 31, 2015) ("*Order*"). Because the district court did not err in disqualifying Dynamic 3D's counsel and in dismissing the complaint, we affirm.

BACKGROUND

In 2006, Schlumberger hired Charlotte Rutherford in a senior counsel position as Manager of Intellectual Property Enforcement, in licensing and litigation; promoted her to Director of Intellectual Property in 2009; and then promoted her again to Deputy General Counsel for Intellectual Property. Her job duties included "developing and implementing the worldwide IP strategy,"

"protecting and preserving [Schlumberger's] IP assets including patents, trademarks and trade secrets," and "advis[ing] senior [Schlumberger] executives regarding risk issues relating to IP." Joint App. ("J.A.") 958. She was also responsible for the company's worldwide program for enforcing intellectual property, including litigation, and directed and supervised outside counsel on intellectual property legal matters. *Id.*

As part of her work at Schlumberger, Rutherford managed a copyright lawsuit involving Petrel, Schlumberger's software platform for three-dimensional visualization, mapping, and reservoir modeling of oil wells. She was also involved in a "Goldstar" project that evaluated further patentable aspects of Petrel and assessed the risk of lawsuits against it. One competitor's product analyzed during this project was Austin Geomodeling's RECON software. Austin Geomodeling filed a patent application in 2007 that eventually issued as U.S. Patent 7,986,319 ("the '319 patent") in 2011. RECON is supposedly the commercial embodiment of the '319 patent, which is directed to systems and methods of combining seismic and well log data into a real-time, interactive three-dimensional display.

In mid-2013, after seven years at Schlumberger, Rutherford left Schlumberger and soon thereafter began working as Senior Vice President and Associate General Counsel at Acacia Research Group LLC. Acacia Research Group LLC is a wholly-owned subsidiary of Acacia Research Corporation, the parent company of various patent-holding entities, including Dynamic 3D.

Shortly after joining Acacia, Rutherford twice met with the inventors of the '319 patent to discuss Acacia's acquisition of the patent and possible future litigation. J.A. 755–56, 760, 762. She also participated in a telephone call with the law firm of Collins, Edmonds, Pogorzelski, Schlather & Tower PLLC ("CEP") and one of her

subordinates, Gary Fischman, regarding the '319 patent. J.A. 765. Schlumberger's Petrel product was discussed as a potential target of patent infringement litigation, at the meetings and in the call. *See, e.g.*, J.A. 759–761, 764, 766, 828–829, 831. Fischman and CEP then prepared a recommendation to Acacia's CEO to acquire the '319 patent and to sue Schlumberger and others, and Rutherford "approved" or "concurred" in that recommendation. J.A. 769–71, 774–77. Rutherford and Fischman also jointly made the decision to hire CEP as outside counsel. J.A. 784–85. Acacia subsequently retained CEP for all '319 patent-related litigation and acquired the patent. Dynamic 3D was formed as a wholly-owned subsidiary of Acacia, and days later was assigned the '319 patent on December 9, 2013. *Order* at *1. Dynamic 3D, at least as of May 2014, had no employees.

In February 2014, Dynamic 3D filed several lawsuits, including one asserting that Schlumberger, in its use and sale of Petrel, infringed the '319 patent. The complaint alleges actual knowledge of the '319 patent by Schlumberger as early as the issuance of the patent in July 2011. The district court stayed the case except for limited claim construction discovery. Schlumberger raised Rutherford's potential conflict of interest to the court in April 2014. After a stay was lifted in August, Schlumberger filed a motion to disqualify Dynamic 3D's counsel. The district court granted Schlumberger's motion, disqualifying Rutherford, other in-house counsel for Acacia Research Corporation and its subsidiaries, and the CEP firm from representing Dynamic 3D in the instant case.

Relatedly, Schlumberger sued Rutherford in Texas state court in March 2014, presenting evidence that she retained copies of confidential and privileged information, including that relating to Petrel, for purposes of providing it to Acacia. The court dismissed all but the breach-of-contract claim for violating her confidentiality agreement, finding that the Texas anti-SLAPP statute protected

Rutherford's First Amendment rights to petition and association, *viz.*, her "communication" of a "concurrence with the recommendation by outside counsel and in-house counsel to acquire the [']319 patent and to sue Schlumberger." J.A. 825, 828. The court sanctioned Schlumberger for bringing the suit, ordering payment of $600,000 in attorneys' fees and sanctions. Schlumberger challenged the decision to dismiss almost all of the claims, but the state appellate court dismissed that appeal for lack of jurisdiction over an interlocutory appeal. These issues are not before us in this appeal.

The district court in this case first found that Rutherford's work at Schlumberger was substantially related to her current work at Acacia. The court found that because the accused features of Petrel existed in the older versions that Rutherford was exposed to, and because she was involved at Schlumberger in efforts to license Petrel to other companies, the evidence created an irrebuttable presumption that she acquired confidential information requiring her disqualification. *Order* at *5.

The district court then determined that the acquired knowledge should be imputed to all Acacia attorneys for purposes of participating in Dynamic 3D's suit against Schlumberger. The court noted that conflict rules for "firms" also apply to corporate legal departments, and that Dynamic 3D depended entirely on Acacia's legal department for its strategy and litigation conduct. *Order* at *5–6. The court was persuaded by evidence of Rutherford's involvement in acquiring the '319 patent, in deciding to sue Schlumberger, and in retaining CEP. *Order* at *6. The court found that Dynamic 3D failed to rebut the presumption of disclosure of Schlumberger's confidential information, and thus disqualified in-house counsel for Acacia Research Corporation and its subsidiaries. *Id.*

The district court lastly extended the disqualification to CEP, interpreting Fifth Circuit case law on disqualify-

ing co-counsel as shifting the evidentiary burden to Dynamic 3D to prove non-disclosure after Schlumberger met its burden to create a rebuttable presumption of disclosure. *Order* at \*7. The court found that the evidence showed multiple communications among Rutherford, Fischman, and CEP while preparing to file suit against Schlumberger. *Id.* As Fischman continued to not only actively work with CEP in this case but also communicate information regarding the litigation to Rutherford, the court also disqualified CEP. *Id.*

Consequently, because the pleadings were drafted by counsel presumed to possess Schlumberger's confidential information, the district court dismissed all of Dynamic 3D's claims against Schlumberger without prejudice. *Id.*

Dynamic 3D and Acacia timely appealed from the district court's decision to this court. Shortly before the scheduled oral argument on August 3, 2016, Dynamic 3D and Acacia submitted a motion to dismiss the appeal, asserting that the case had been settled. *Dynamic 3D Geosolutions, LLC v. Schlumberger Ltd.*, No. 2015-1628, ECF No. 76 (Fed. Cir. Aug. 1, 2016). Schlumberger, however, opposed the motion. *Id.*, ECF No. 77. Acacia subsequently submitted the supposed settlement agreement to us under seal. The agreement appears to consist of hastily handwritten notes on two sheets of notebook paper along with a typed cover sheet containing minimal clarifying language and a signature page dated June 17, 2016. *Id.*, ECF No. 84 (Fed. Cir. Aug. 4, 2016). Although a settlement need not be effectuated by a formal document, upon review of the submission, we agree with Schlumberger that the appeal was not concluded by the agreement as submitted to this court and, based on the status of the appeal as of the date of oral argument, decline to terminate the appeal under Federal Rule of Appellate Procedure 42(b). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review a district court's disqualification and dismissal order under the law of the regional circuit in which the district court sits, here, the Fifth Circuit. *Atasi Corp. v. Seagate Tech.*, 847 F.2d 826, 829 (Fed. Cir. 1988). Because motions to disqualify counsel "are substantive motions affecting the rights of the parties," we apply standards developed under federal law. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992); *see also In re Am. Airlines, Inc.*, 972 F.2d 605, 609 (5th Cir. 1992) ("Federal courts may adopt state or ABA rules as their ethical standards, but whether and how these rules are to be applied are questions of federal law."). Applying the law of the Fifth Circuit, the standard of review is for abuse of discretion, with the underlying factual findings reviewed for clear error and the interpretation of the relevant rules of attorney conduct reviewed *de novo*. *F.D.I.C. v. U.S. Fire Ins.*, 50 F.3d 1304, 1311 (5th Cir. 1995); *In re Am. Airlines*, 972 F.2d at 609. We also review the grant of a motion to dismiss without prejudice for abuse of discretion. *See United States ex rel. Holmes v. Northrop Grumman Corp.*, 642 F. App'x 373 (5th Cir. 2016) (noting that "abuse of discretion standard applies in [an appellate court's] review of a district court's dismissal of a complaint as a result of ethical violations"); *cf. Marts v. Hines*, 117 F.3d 1504, 1506 (5th Cir. 1997) (en banc) (noting that "trial court's exercise of discretion" for dismissal without prejudice would be focus of appellate review).

Three applicable sets of rules govern the grant of the motion to disqualify counsel in this case: (1) the ABA Model Rules of Professional Conduct, the legal profession's national ethical rules; (2) the Texas Disciplinary Rules of Professional Conduct, the state-specific adaptation of the ABA Model Rules; and (3) the Local Rules for the Western District of Texas, which adopt the Texas Disciplinary Rules. *See, e.g., In re ProEducation Int'l,*

*Inc.*, 587 F.3d 296, 299 (5th Cir. 2009); *Nat'l Oilwell Varco LP v. Omron Oilfield & Marine, Inc.*, 60 F. Supp. 3d 751, 758 (W.D. Tex. 2014).

## I. Disqualification of Counsel

## A. The Disqualification of Rutherford

Texas Disciplinary Rule 1.09(a) provides that:

(a) Without prior consent, a lawyer who *personally* has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

. . .

(2) if the representation *in reasonable probability* will involve a violation of [the rule regarding Confidentiality of Information]; or

(3) if it is the same or a *substantially related* matter.

Tex. Disciplinary Rules of Prof'l Conduct ("Texas Disciplinary Rules") r. 1.09 (emphases added).

Comment 4 to Rule 1.09 notes that representation would be improper "if there were a reasonable probability that the subsequent representation would involve either an unauthorized disclosure of confidential information . . . or an improper use of such information to the disadvantage of the former client," and that "[w]hether such a reasonable probability exists in any given case will be a question of fact." *Id.* cmt. 4.

Comment 4B further elaborates that "'substantially related' primarily involves situations where a lawyer could have acquired confidential information concerning a prior client that could be used either to that prior client's disadvantage or for the advantage of the lawyer's current client or some other person." *Id.* cmt. 4B; *cf. In re Am. Airlines*, 972 F.2d at 618–19 (noting that an attorney's

representation "does not need to be 'relevant' in the evidentiary sense to be 'substantially related,'" but rather "need only be akin to the present action in a way reasonable persons would understand as important to the issues involved" (quoting *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1346 (5th Cir. 1981))).

The corresponding ABA Model Rule similarly prohibits representation that presents a conflict of interest with a former client:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related* matter in which that person's interests are materially adverse to the interests of the former client . . . .
>
> . . .
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> > (1) use information relating to the representation to the disadvantage of the former client . . . .

Model Rules of Prof'l Conduct ("ABA Model Rules") r. 1.9 (Am. Bar Ass'n 1983) (emphasis added).

Dynamic 3D argues that the district court clearly erred in finding that Rutherford's former representation was substantially related to her alleged representation in this case. Dynamic 3D characterizes her involvement in the acquisition of the '319 patent and enforcement against other parties as "limited," and denies any such involvement in the instant suit against Schlumberger. Dynamic 3D asserts that the court based its finding on descriptions of privileged documents rather than on a review of the

actual documents, and ignored Rutherford's testimony that she was not directly involved in the Goldstar projects. Thus, Dynamic 3D contends, the court failed to fully analyze the facts or properly apply Fifth Circuit precedent. Dynamic 3D lastly argues that Schlumberger failed to establish that Rutherford played anything beyond a limited supervisory role, with some general exposure to earlier versions of Petrel in the copyright lawsuit.

Schlumberger responds that Fifth Circuit precedent imposes an irrebuttable presumption that relevant confidential information was acquired once prior and present representations are shown to have been substantially related. Schlumberger argues that the district court's factual finding that Rutherford's prior work is substantially related to this suit is based on Rutherford's personal representation of Schlumberger in litigation and licensing matters, including leading a team that evaluated intellectual property rights and risks relating to Petrel. Moreover, Schlumberger counters, the court correctly declined to credit self-serving testimony in light of the contrary evidence presented. Schlumberger notes that Rutherford admitted that she acted in a legal capacity for Acacia at the initial meetings concerning the '319 patent, and that the assessment of Petrel as being a possible litigation target was clearly related to her prior work. Schlumberger further points out that Rutherford would have had access to material sensitive information even in her more remote supervisory role during her previous employment.

We agree with Schlumberger that the district court did not clearly err in finding that Rutherford's work for Schlumberger, and for Acacia and Dynamic 3D, were substantially related. Rutherford occupied senior counsel, director, and deputy general counsel positions in a large company's intellectual property department. The record documents her involvement at Schlumberger in a project specifically evaluating a product later accused of infringement by Acacia, and the risks of such an infringe-

ment suit. Rutherford's representation at Schlumberger included efforts to license Petrel when the later-accused features of the product existed in the older versions with which Rutherford was involved. We will therefore not disturb the district court's finding that Rutherford's employment with Schlumberger was more than tangentially related to the issues in the present suit.

We recognize that there are important societal rights implicated by attorney disqualification, such as the right of a party to counsel of its choice and an attorney's right to freely practice his or her profession. However, there is an overriding countervailing concern suffusing the ethical rules: a client's entitlement to an attorney's adherence to her duty of loyalty, encompassing a duty of confidentiality. *See In re Am. Airlines*, 972 F.2d at 616–20; Texas Disciplinary Rules r. 1.06 cmts. 1, 2; ABA Model Rules r. 1.9 cmts. 4, 7; *see also Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979) ("The obligation of an attorney not to misuse information acquired in the course of representation serves to vindicate the trust and reliance that clients place in their attorneys. A client would feel wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the clients in the same matter. . . . [T]his would undermine public confidence in the legal system as a means for adjudicating disputes."). Accordingly, the obligation to protect a client's confidential information exists as part of the larger duty of loyalty owed to clients to maintain the integrity of the attorney–client relationship.

Rutherford herself admitted attending, as legal counsel for Acacia, meetings with the inventors of the '319 patent, other in-house counsel, and outside counsel regarding the acquisition of the '319 patent, and admitted that Schlumberger's Petrel product was a topic of discussion at those meetings. Her admitted "communication," particularly the "concurrence with the recommendation

by outside counsel and in-house counsel to acquire the [']319 patent and to sue Schlumberger," J.A. 825–28, would have entailed assessing the patent's value as a litigation tool against Schlumberger with knowledge of her former employer's confidential information. *See also* J.A. 3648, 3651–57 (privilege logs from Dynamic 3D and Acacia describing litigation-related communications that involved Rutherford). Even if we were to reweigh the evidence, which in our role as an appellate court would be inappropriate, Dynamic 3D's arguments that Rutherford was not involved in the current suit are thus way wide of the mark. Acacia itself admitted that it failed to screen her from the case, Oral Arg. at 4:48–5:30, and both Dynamic 3D and Acacia provided privilege logs evincing Rutherford's involvement in the present suit, J.A. 3648, 3651–52. Rutherford is therefore irrebuttably presumed to have possessed Schlumberger's relevant confidential information and was properly found to have been disqualified.

The district court affirmed the sound principle of not suborning the disloyalty of attorneys. It was inappropriate to hire a senior attorney, one intimately knowledgeable concerning a particular product, its competitors, and its associated business strategies and intellectual property, into a position in which she not only participated in but in fact played a significant role in acquiring a patent used to accuse her former employer's product of patent infringement.

## B. The Disqualification of Other In-House Counsel

Texas Disciplinary Rule 1.09(b) provides that "when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a)." Texas Disciplinary Rules r. 1.09(b). Comment 5 explains that this paragraph "extends paragraph (a)'s limitations on an individual

lawyer's freedom to undertake a representation against that lawyer's former client to all other lawyers who are or become members of or associated with the firm in which that lawyer is practicing." *Id.* cmt. 5. The comment exemplifies the imputation rule as: "[I]f a lawyer severs his or her association with a firm and that firm retains as a client a person whom the lawyer *personally* represented while with the firm, that lawyer's ability thereafter to undertake a representation against that client is governed by paragraph (a); and all other lawyers who are or become members of or associates with that lawyer's new firm are treated in the same manner by paragraph (b)." *Id.* (emphasis added).

The corresponding ABA Model Rule similarly extends the prohibition to members of a lawyer's new "firm":

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless
>
> . . .
>
>> (2) the prohibition is based upon Rule 1.9(a) or (b) and arises out of the disqualified lawyer's association with a prior firm, and
>>
>>> (i) the disqualified lawyer is timely screened from any participation in the matter . . . ; [and]
>>>
>>> (ii) written notice is promptly given to any affected former client . . . .

ABA Model Rules r. 1.10. Comment 2 emphasizes that each lawyer at a "firm" is "vicariously bound by the obligation of loyalty." *Id.* cmt. 2.

Dynamic 3D argues that any presumption of disclosure to Acacia's other in-house attorneys is questionable

under Fifth Circuit law. If it exists, Dynamic 3D contends, that presumption was rebutted by uncontroverted evidence that there was no actual disclosure of confidential information from Rutherford to other Acacia attorneys. Dynamic 3D notes that Rutherford, Fischman, and Acacia's CEO all testified that Rutherford's involvement with the patent at Acacia was very limited, and unrelated to Schlumberger. Dynamic 3D also faults the district court for failing to balance the parties' interests as Dynamic 3D contends is required under Fifth Circuit law; no specific harm to Schlumberger was ever identified, compared with the time and resources spent by Dynamic 3D on preparing for and prosecuting this case.

Acacia similarly argues that Fifth Circuit law does not require a presumption of disclosure for in-house attorneys because that presumption should only be grounded in the duty of loyalty resulting from personal representation. Because none of Acacia's "licensing executives" have worked for Schlumberger and thus evidence no appearance of disloyalty, Acacia contends, there is no rationale for a presumption, and thus imputation should be analyzed as for co-counsel, *i.e.*, requiring actual disclosure. Acacia also asserts that the court's factually unsupported findings contradict sworn statements and corroborating evidence that Rutherford did not actually disclose Schlumberger's confidential information. Acacia further faults the court for shifting the burden of persuasion to Acacia. According to Acacia, Schlumberger never proved that Rutherford acquired confidential information; she was only presumed to have it. Moreover, Acacia argues, the disqualification unduly burdens its right to counsel; specifically, the decision effectively enjoins Acacia from ever asserting the patent against Schlumberger.

Schlumberger responds that under Fifth Circuit law on imputation to other in-house counsel, the analysis turns on whether the conflicted attorney's representation

is personal.  Schlumberger notes that the district court found that, rebuttable or not, Dynamic 3D failed to rebut the presumption of disclosure with any evidence that Acacia screened Rutherford from work she performed at Schlumberger with others by instructing her not to work on related matters.  Schlumberger additionally responds that Texas law does not require actual disclosure, only a genuine threat of disclosure.  Schlumberger further argues that Rutherford's prior work made her privy to information relating to her later actions for Acacia, and thus her communications—in the form of approvals and concurrence with recommendations—tacitly disclosed her belief, based on Schlumberger's confidential information, that Dynamic 3D's claims had merit and that Schlumberger's defenses, including invalidity, were meritless.

Schlumberger also contends that a balancing of interests is not required when imputing a conflict to other in-house counsel.  Even if the court were to explicitly balance the parties' interests, Schlumberger argues that the prejudice to Schlumberger greatly outweighs the harm that Dynamic 3D inflicted on itself.  The potential source of the conflict of interest was flagged early on in the case, but Acacia's attorneys continued to work on the suit and delayed the filing of Schlumberger's disqualification motion by opposing lifting the stay.

We agree with the district court that regardless whether the presumption was irrebuttable or rebuttable, there was a presumption that was not rebutted.  Dynamic 3D and Acacia failed to show that knowledge of Schlumberger's confidential information should not be imputed to Acacia's other in-house counsel.  The ethical standards are clear that lawyers similarly associated have had conflicts imputed to them.  *See* Texas Disciplinary Rules r. 1.10; ABA Model Rules r. 1.9(b).  Although the Fifth Circuit does not subscribe to the "taint" theory for imputing conflicts, it focuses on remaining "sensitive to preventing conflicts of interest" and "rigorously appl[ies] the

relevant ethical standards." *See In re Am. Airlines*, 972 F.2d at 611. Acacia admitted at oral argument that there was no ethical screening wall or other objective measures implemented to prevent confidential information from being used, to disadvantage Schlumberger. Here, there was a clear conflict of interest for Rutherford, and the principles underlying the ethical standards mandate extending the disqualification to Acacia's other in-house attorneys.

Even without imputation, Fischman himself reported solely to Rutherford until *after* the potential conflict was raised to the court. In fact, all four Acacia employees in the Energy Group in Acacia's Houston office reported to Rutherford. In attending meetings and making decisions such as retaining CEP as outside counsel, Rutherford communicated to the other in-house counsel that she supported the litigation strategy and thereby disclosed confidential information to the other Acacia attorneys.

Moreover, we disagree with Dynamic 3D and Acacia that a balancing test is required under Fifth Circuit law. Although some situations present facts in which an analysis balances the competing interests of the parties in order to determine whether disqualification would be too harsh a remedy, those situations are inherently fact-specific or presented in different procedural postures, *e.g.*, in a petition for a writ of mandamus. Even so, we find no error when the case was barely litigated before Dynamic 3D was on notice that Schlumberger identified the conflict. The complaint was filed in February; the case was stayed from April to August; the potential issue was brought to the court's attention in April during the stay; and the motion was filed days after the stay was lifted in August. Dynamic 3D and Rutherford should have known that their actions were inappropriate.

## C. The Disqualification of CEP

Dynamic 3D lastly disputes the "double imputation" of the conflict of interest to CEP on the ground that only actual disclosure warrants the disqualification of outside counsel under Fifth Circuit law. Dynamic 3D argues that Rutherford is only presumed to have acquired relevant confidential information, and that there is no record evidence of any disclosure of such information to CEP or any substantive communications between Rutherford and CEP. Dynamic 3D faults the district court for failing to identify any specific disclosures actually made, and for ignoring Dynamic 3D's rebuttal evidence showing the absence of disclosures to CEP. Dynamic 3D further asserts that the decision to sue Schlumberger was made by Acacia's CEO alone, and that Rutherford's concurrence with that decision was not a communication substantive enough to constitute actual disclosure of confidential information. Dynamic 3D thus contends that the district court erred because Fifth Circuit law does not provide for a presumption of disclosure to co-counsel if there is no attorney–client relationship.

Schlumberger responds that the evidence supports the district court's findings of substantive contacts and communications among Rutherford, Fischman, and CEP, which created a rebuttable presumption of disclosure. No such rebuttal was found by the court. Schlumberger contends that under the Texas Supreme Court's interpretation of the Texas Disciplinary Rules, once Schlumberger showed sufficient contact or communication between Rutherford and CEP, the burden shifted to Dynamic 3D to show that there was no reasonable prospect that confidential information was disclosed, and no actual disclosure. Schlumberger further responds that even without a presumption of disclosure, there was actual disclosure to CEP by Rutherford's concurring in various recommendations. Given her knowledge of Petrel, Schlumberger asserts, her opinion carried weight and was not merely "a

wink and a nod" to encourage Acacia's business and litigation decisions. *See S.E.C. v. Rocklage*, 470 F.3d 1 (1st Cir. 2006) (finding that "a wink and a nod" communicated confidential information constituting unlawful tipping).

We thus agree that the district court did not err in concluding that the disqualification should extend to CEP. Even beyond presumptions, there was sufficient evidence of Rutherford's involvement in the selection of CEP as outside counsel and in the litigation against Schlumberger to support a finding of communication by conduct.

Dynamic 3D and Acacia's arguments focus on presumptions and actual disclosure, ignoring the totality of the duty owed to clients. Here, Rutherford disregarded the duty of loyalty and communicated confidential information not only to other in-house counsel but also to outside counsel, and thus the district court did not clearly err in imputing the conflict of interest to outside counsel as well as to in-house counsel.

We accordingly find no error in the district court's conclusion that Rutherford, Acacia's other in-house counsel, and CEP were properly disqualified from representing Dynamic 3D in this case.

## II. Dismissal Without Prejudice

Dynamic 3D argues that the district court lacked the legal authority to dismiss its case as a result of disqualifying its counsel. Dynamic 3D faults the district court for not specifying what "significant prejudice" to Schlumberger justified dismissal. Moreover, Dynamic 3D asserts, there was no record evidence of any actual disclosure and thus the case could not have been "tainted" from Rutherford's supposed breaches of confidence. The dismissal, Dynamic 3D avers, was overly harsh and constituted an abuse of discretion for not instead granting the company time to retain new counsel. Dynamic 3D distinguishes

other cases that have been dismissed as a result of disqualified counsel as grounded in facts that the disqualified attorney was acting in some capacity as a party or that disclosure was clearly and specifically proven.

Schlumberger responds that the Fifth Circuit previously affirmed a district court's decision to dismiss a case without prejudice after disqualifying an attorney based on an irrebuttable presumption of using confidential information to a former client's disadvantage. In support of the district court's decision, Schlumberger cites various cases in the Second Circuit and one in the Western District of Louisiana that were similarly dismissed without prejudice based on the disqualification of counsel.

Based on the facts of this case, we find that the district court in its abbreviated analysis on this point did not abuse its discretion in dismissing all pleaded claims without prejudice. The court did not err in finding that Dynamic 3D's pleadings were drafted by lawyers presumed to possess Schlumberger's confidential information and that the significant prejudice that Schlumberger would face, if the case were to continue, outweighed the harsh result of dismissal. We do not dispute the court's conclusion. All aspects of the case were contaminated by Rutherford's actions, from the purchase of the '319 patent, to preparation for suit against Schlumberger, to the actual filing of the suit.

The district court's decision is not without precedent In *Doe v. A Corp.*, the Fifth Circuit affirmed a district court's decision disqualifying counsel and dismissing part of the case without prejudice. 709 F.2d 1043, 1045, 1050–51 (5th Cir. 1983). Some district courts have granted a period of time for a party to retain new counsel after disqualification, which appears to be typically 45 days. *See, e.g., McIntosh v. State Farm Fire & Cas. Co.*, No. 1:06-cv-1080, 2008 WL 941640, at *2 (S.D. Miss. Apr. 4, 2008) (granting 45 days to retain new counsel after

attorney disqualification, after which failure to do so or to proceed *pro se* would make case "eligible for dismissal without prejudice"); *see also Sumpter v. Hungerford*, No. 12-717, 2013 WL 2181296, at *11 (E.D. La. May 20, 2013) (ordering new counsel within 45 days after attorney disqualification). Others, however, have found that continuing a case after disqualification without dismissal would greatly prejudice a party because "the case would be tried on a record developed primarily through the fruits of [the disqualified attorney]'s unethical labor." *United States ex rel. Holmes v. Northrop Grumman Corp.*, No. 1:13-cv-85, 2015 WL 3504525 (S.D. Miss., June 3, 2015), *aff'd*, 642 F. App'x 373, 378 (5th Cir. 2016).

Dynamic 3D itself admits that, because of the disqualification of its attorneys, it would have to hire a new employee to manage the re-filing of the complaint, and retain new outside counsel. Dynamic 3D Br. 42–43. Not only would those actions likely take more than 45 days and effectively impact the district court's docket, but also the potential for prejudice would continue from the improper use of Schlumberger's confidential information in preparing the original pleadings. Based on the district court's reasoning, forcing Dynamic 3D to break new ground with a fresh complaint and clean docket rather than to continue drawing from a poisoned well was not an abuse of discretion.

We also note that Dynamic 3D did not expressly request leave to amend its pleadings or substitute counsel, *see* J.A. 1317–18; even if it had, the district court would have had the discretion to deny that request, *see Whitmore v. Victus, Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000). *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (finding no abuse of discretion in denying leave to amend when not expressly requested from district court).

We therefore conclude that the district court did not abuse its discretion in dismissing all of the pleaded claims in Dynamic 3D's complaint without prejudice.

## CONCLUSION

We have considered the remaining arguments and conclude that they are unpersuasive. For the foregoing reasons, we conclude that the district court did not err in disqualifying Dynamic 3D's counsel and in dismissing the complaint, and we therefore affirm the district court's decision.

## **AFFIRMED**

### COSTS

Costs to Schlumberger.

# United States Court of Appeals for the Federal Circuit

---

**DYNAMIC 3D GEOSOLUTIONS LLC,**
*Plaintiff-Appellant*

**ACACIA RESEARCH CORPORATION, ACACIA RESEARCH GROUP LLC,**
*Nonparties-Appellants*

**v.**

**SCHLUMBERGER LIMITED (SCHLUMBERGER N.V.), SCHLUMBERGER HOLDINGS CORPORATION, SCHLUMBERGER TECHNOLOGY CORPORATION,**
*Defendants-Appellees*

---

2015-1628, 2015-1629

---

Appeals from the United States District Court for the Western District of Texas in No. 1:14-cv-00112-LY, Judge Lee Yeakel.

---

WALLACH, *Circuit Judge*, concurring.

I concur entirely with the majority's opinion, but write to briefly address the honor of our profession as attorneys. In the law, as in life, it is best if one's conduct is such that when accused of malefaction, the community responds as one that "Ms. or Mr. _____ simply doesn't act that way." The standard is always aspirational for we are

human, but if we do not strive to reach it, then perhaps we ought to consider that the game's not worth the candle.

Ms. Rutherford's conduct failed to meet minimal standards necessary to preserve public confidence in the legal system, and for that, she and others paid a price. That does not mean, however, that she should not, as a member of what is supposed to be an honorable profession, have held herself to a higher standard.